KATHLEEN COLE & others *vs.* BROOKLINE HOUSING AUTHORITY & another.

Norfolk.     November 10, 1976. — December 21, 1976.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Housing,* Notice of action by housing authority.  *Notice.*  *Due Process of Law,* Notice of action by housing authority.

Neither the due process clause of the Fourteenth Amendment nor G. L. c. 121B, § 31, requires public notice of a municipal housing authority's application to the Department of Community Affairs for approval of a low income housing project. [708-709]

BILL IN EQUITY filed in the Superior Court on January 17, 1974.

The case was heard by *Connolly,* J., on a motion for summary judgment.

*Joseph H. Walsh* for Kathleen Cole & others.

*John H. Henn (Stephen B. Deutsch* with him) for Brookline Housing Authority & another.

HALE, C.J.    The plaintiffs, twenty-six taxable inhabitants of Brookline, filed suit in Superior Court against the defendants Brookline Housing Authority (BHA) and Lewis S. W. Crampton, Commissioner of the Department of Community Affairs (DCA), seeking to halt work on a BHA project involving the acquisition and renovation of several existing apartment buildings for use as low income housing. The BHA had begun the project after obtaining the approval of the DCA, as required by G. L. c. 121B, § 31.[1] The plaintiffs claimed that G. L. c. 121B, § 31, re-

---

[1] General Laws c. 121B, § 31, as amended by St. 1972, c. 318, provides: "A housing authority shall not undertake a low-rent housing project until it has submitted to the department the plans and description of the project, the estimated cost thereof, the proposed method of financing it, and a detailed estimate of the expenses and revenues thereof and the department has found that the plans and description conform to proper standards of health, sanitation and safety, that the financial plan is sound and that with the aid of any federal grant or other subsidy the revenue from the project will be sufficient to meet its annually recurring expenses, including, without limitation of the foregoing, payments in lieu of taxes, depreciation and service of its indebtedness, and that the probable costs are such that it will be practicable to rent the property in accordance with the limitations set forth in section thirty-two without incurring an annual deficit.

"In addition, the provisions of subparagraphs *(a)* and *(b)* shall apply to all projects except those as to which a contract between the federal government and a housing authority was in effect on December seventh, nineteen hundred and sixty-six and those involving the reconstruction, remodeling or repair of existing buildings:

"*(a)* Projects involving the purchase or acquisition of the right to use completed dwelling units which have been recently constructed, reconstructed or remodeled, whether condominium units, individual buildings part of a larger development, or a portion of the units in a multi-family development, shall be approved by the department only after it makes the following determinations: (i) the number of units involved, other than units specifically to be used for elderly persons of low income, does not exceed one hundred in any one building or development; and (ii) the housing authority has made adequate arrangements for the maintenance and operation of the units, either through use of its own personnel or by contract with the owner or manager of the other units in the development.

"*(b)* Projects involving the construction of *new* buildings by a housing authority shall be approved by the department *following due notice*

quired public notice of the BHA's application for DCA approval and that such notice had never been provided. Summary judgment (Mass.R.Civ.P. 56, 365 Mass. 824 [1974]) was allowed in favor of the defendants. The plain-

---

*and a public hearing in the town or city involved* held to consider testimony relating to the determinations required to be made. The department shall approve such a project only if it makes the following determinations: (i) the proposed project does not include in excess of one hundred dwelling units in any one site; (ii) no site for the proposed project is located adjacent to or within one eighth of a mile of any site for a low-rent housing project which is in existence or has been approved by the department or is before the department for approval, except sites for projects approved or being approved under the preceding subparagraph (*a*); (iii) the design and layout of the proposed project is appropriate to the neighborhood in which it is to be located; and (iv) an adequate supply of dwelling units for families of low income is not then available in the private market, and the housing authority, after reasonable effort, has been unable to obtain such units either through reconstruction, remodeling, or repair of existing buildings or by the purchase of completed dwelling units. The provisions of this clause shall not apply to any project which shall be certified by the commissioner to be a project designed specifically for elderly persons of low income. A project shall be deemed to be designed specifically for elderly persons of low income if a majority of the dwelling units in said project are designed specifically for elderly persons of low income and if not more than one hundred dwelling units in said project are designed for families of low income.

"The department shall give written notice to the authority of its decision with respect to any project within thirty days after submission of such project. *The department shall hold a public hearing upon any project, if requested in writing so to do, within ten days after the submission of the project, by the housing authority, or by the mayor or city council of the city or the selectmen of the town in which the proposed project is located, or by twenty-five or more taxable inhabitants of such city or town. Such public hearing may be combined with that required under subparagraph* (b) *in the case of projects approved under that subparagraph.* If the department shall disapprove any project, it shall state in writing in such notice its reason for disapproval.

"A project which has not been approved by the department when submitted to it may be again submitted to it with such modifications as are necessary to meet its objections.

"When a housing authority has determined the location of a proposed clearance or low-rent housing project, it may, without awaiting the approval of the department, proceed by option or otherwise, to obtain control of the real property to be acquired for the project; provided, however, that it shall not, without the approval of the department, unconditionally obligate itself to acquire such real estate. When a housing authority receives notice that such a project has been approved by the department, it may proceed to acquire real estate for the project, and may construct, or contract for the construction of, any buildings and facilities planned therefor" (emphasis supplied).

tiffs have appealed from the ensuing judgment. The only issue raised on appeal is the plaintiffs' claim that both the due process clause of the Fourteenth Amendment to the United States Constitution and G. L. c. 121B, § 31, require that public notice be given of the submission to the DCA of any BHA plan for low income housing.

1. The plaintiffs have no constitutional right to notice of the BHA's submission of a project to the DCA for approval. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges* v. *Roth,* 408 U.S. 564, 569 (1972). The plaintiffs here have not shown that they are threatened with deprivation of any such protected interest. The statutory grant of a hearing upon request is a procedural right, not a substantive property interest, and cannot of itself trigger additional procedural requirements.

2. General Laws c. 121B, § 31, does not require the BHA to give public notice of its application to the DCA for approval of a low income housing project. The relevant clause of § 31 provides in part that the DCA "shall hold a public hearing upon any project, if requested in writing so to do, within ten days after the submission of the project . . . by twenty-five or more taxable inhabitants of such city or town." The plaintiffs claim that this language must be construed to require that the BHA give them notice of its submission of a project plan to the DCA for approval, since failure to give such notice frustrates their right to a hearing upon request and thereby frustrates the purpose of the statute. But the omission in the statute of a provision for notice of the BHA's submission to the DCA for project approval cannot be supplied by this court. " '[I]f the omission was intentional, no court can supply it. If the omission was due to inadvertence, an attempt to supply it . . . would be tantamount to adding to a statute a meaning not intended by the Legislature.' " *Boylston Water Dist.* v. *Tahanto Regional Sch. Dist.* 353 Mass. 81, 84 (1967). "We can only interpret the law as it was promulgated . . .." *Ar-*

*ruda* v. *Director Gen. of R.Rs.* 251 Mass. 255, 263 (1925). A reading of the statute as a whole indicates that the omission of a notice requirement was purposeful. Section 31 explicitly provides for notice and public hearing before DCA approval of a project involving new construction (as opposed to acquisition of existing buildings). It is clear that the Legislature has made a judgment that where a project would have a greater impact on a community, as would be the case with new construction, more procedural safeguards would be required before the commencement of such a project, but where a project would involve only minor changes in an area there would be a lesser need for community participation.

The plaintiffs also claim that the omission of a notice requirement nullifies their statutory right to a hearing because without notice of the submission of a plan to DCA, they cannot request a hearing within the ten-day time limit.[2] But BHA meetings are required by statute to be open to the public.[3] If a project discussed at an open BHA meeting becomes the subject of opposition by the community, the fact that the meeting is open gives community members ample notice and opportunity to request a hearing. There need be no additional notice. See *Dodge* v. *Prudential Ins. Co.* 343 Mass. 375, 381-382 (1961).

*Judgment affirmed.*

---

[2] See § 31 (third par.), footnote 1, *supra.*

[3] G. L. c. 39, § 23A, as amended through St. 1970, c. 571.