FRANCIS E. MONTAGUE vs. COMMISSIONER OF THE
METROPOLITAN DISTRICT COMMISSION & others.[1]

Suffolk.  November 9, 1979. — January 17, 1980.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Police.  Metropolitan District Commission,* Police.

Under G. L. c. 92, § 63B, the Metropolitan District Commission, acting
through its Line of Duty Board, was empowered to terminate a police
officer's line-of-duty status by finding that his incapacity was perma-
nent after it had initially found the incapacity to be temporary, with-
out waiting to discontinue the line-of-duty payments until the State
Retirement Board had acted on the officer's request for accidental dis-
ability retirement under c. 32, § 7.  [64-66]

CIVIL ACTION commenced in the Superior Court on
April 12, 1978.

The case was heard by *Nolan,* J., on a motion for sum-
mary judgment.

*Catherine A. White,* Assistant Attorney General, for the
defendants.

*Gabriel O. Dumont, Jr.,* for the plaintiff.

HALE, C.J.  The defendants have appealed from a sum-
mary judgment rendered in favor of the plaintiff, a former
Metropolitan District police officer, in this action for de-
claratory judgment.  G. L. c. 231A.

On February 19, 1977, the plaintiff was injured in the
performance of his duty as a police officer.  On the follow-
ing day he applied to the Metropolitan District Police Line
of Duty Board (L.O.D. Board) to be placed on line-of-duty

---

[1] The Superintendent of the Metropolitan District police and two
members of the Metropolitan District police "Line of Duty Board."

status under G. L. c. 92, § 63B.[2]  This status would give the plaintiff leave with pay for the duration of his temporary incapacity; that leave would not be charged against his accumulated sick leave.  The L.O.D. Board granted him line-of-duty status on March 1, 1977, and from time to time voted to extend it.  On December 13, 1977, the L.O.D. Board informed the plaintiff that it had found his disability to be permanent and advised him to apply to the State Board of Retirement (S.B.R.) for accidental disability retirement under G. L. c. 32, § 7.  At the same time the L.O.D. Board extended the plaintiff's line-of-duty status to March 13, 1978, so that his regular pay would continue through at least part of the time that the S.B.R. would take to process his application.  The plaintiff's accumulated sick leave maintained his usual salary until April 8, 1978.

The plaintiff initiated this action on April 12, 1978, seeking a declaration that the L.O.D. Board was required to continue line-of-duty payments until the S.B.R. should act on his request for retirement.[3]  A judge of the Superior Court granted the plaintiff's motion for summary judgment.  The judgment declared that the plaintiff was entitled to line-of-duty payments from the date they were terminated until the date the S.B.R. acted upon his "petition for retirement" and that his account should be credited with the sick leave that he had used after March 13, 1978.

---

[2] The relevant part of § 63B, inserted by St. 1948, c. 653, reads: "The commission shall, subject to appropriation, indemnify a metropolitan district police officer . . . for expenses or damages sustained by him while acting as a police officer . . .; and such damages shall include loss of pay by reason of absence from duty on the part of such officer because of temporary incapacity caused by injury suffered through no fault of his own while in the actual performance of duty . . . ."  The commission's responsibilities under this section have been delegated to a "Line of Duty Board" created in 1972.

[3] The S.B.R. granted the plaintiff an accidental disability pension on September 28, 1978.  Retirement payments were made retroactive to April 8, 1978, pursuant to G. L. c. 32, § 7(2), thus meshing its determination under c. 32, § 7, with the L.O.D. Board's determination under § 63B. The plaintiff is entitled to no more.

This case calls for an interpretation of the scope of G. L. c. 92, § 63B, inserted by St. 1948, c. 653. We note at the outset that the legislative history of § 63B affords us no assistance[4] and that there are no decisions of the Supreme Judicial Court or of this court concerning this section.

The plaintiff would have us hold that the Metropolitan District Commission (commission), acting through the L.O.D. Board, was not authorized to terminate his line-of-duty status by finding that his incapacity was permanent after it had initially found that it was temporary. The defendants contend that the plain words of the statute authorized the commission to find that the plaintiff's incapacity was no longer temporary and, consequently, that his line-of-duty status should be terminated. We agree with the defendants' analysis.

Section 63B is silent as to who should evaluate the temporary incapacity for service of an officer injured in the line of duty. It does, however, expressly limit the commission's authority to make payments to an officer to that period during which he is temporarily incapacitated from injuries suffered in the line of duty. We are of the opinion that the commission as the employing agency necessarily has the authority under § 63B to determine whether an officer is so incapacitated. The plaintiff does not question the commission's power in that respect but contends that the power to determine permanent incapacity resides only in the S.B.R. Section 63B is silent as to any authority to make a determination of permanent incapacity. We conclude, however, that a necessary corollary of the power to make an initial finding of temporary incapacity is that the commission is also empowered to reevaluate a given case and determine

[4] The relevant legislative history consists of notations in the journals of the Senate and House of Representatives charting the progress of 1948 House Docs. No. 421, 2249 and 2332, through the process of enactment, in the course of which the only amendment of the part of § 63B quoted in note 2 was the addition of the words "subject to appropriation." See 1948 House Journal at 103, 659, 704-705, 1325, 1447, 1501-1502, 1564, 1658, 1737, 1764, 1773, 1827 and 1845; 1948 Senate Journal at 117, 1136, 1177, 1193, 1250, 1269-1270, 1311 and 1321.

whether an officer's temporary incapacity continues. Should it find that an officer's incapacity is permanent, it could not properly continue to make payments under § 63B.

We note that G. L. c. 41, § 111F, as amended through St. 1977, c. 646, § 2, provides a system of compensation for city or town police officers and firefighters such as that which the plaintiff urges us to read into § 63B. That is, once an officer is found to be temporarily disabled, he is granted leave with pay, which continues until he is certified fit or until he is "retired or pensioned in accordance with law." This procedure closes any hiatus between payments under leave with pay and payments under a retirement system. No such procedure is included in the plan enacted in § 63B. Had the Legislature intended to include such a procedure in § 63B, it could easily have done so, as it did when it later enacted § 111F.[5]

The plaintiff's basic argument is that we should construe § 63B and G. L. c. 32, § 7, as parts of a common scheme so that the payments under § 63B must continue until the S.B.R. determines an officer's incapacity to be permanent and retires him. Although § 7 does restrict the grant of accidental disability retirement to cases where the disabling injury was sustained in the performance of duty, as does § 63B, the plaintiff's contention flies in the face of the retroactivity provisions in § 7.[6] Also there is no cross reference between these sections or the chapters in which they ap-

---

[5] A bill was filed in the House in 1973 (Doc. No. 1083) which sought to accomplish this. That bill was referred to the Joint Committee on Public Service from which it emerged as Senate Doc. No. 1526. It was reported to the Senate Ways and Means Committee, which reported it out as part of a study order (Doc. No. 1784). That order failed to pass, and the entire package of bills died on prorogation.

[6] The provisions of G. L. c. 32, § 7 (as amended through St. 1978, c. 487, § 6), on retirement payments for permanent disability are "effective on the date the injury was sustained, or the hazard on account of which he is being retired was undergone, or on the date six months prior to the filing of the written application . . . or on the date for which he last received regular compensation for his employment in the public service, whichever date last occurs." See note 3, *supra.*

pear. Desirable as it might be to amend § 63B so that it would operate in the same manner as § 111F or to join § 63B with § 7 so that § 7 would control on questions of permanent disability, it is for the Legislature to do so and not for us. *Cole* v. *Brookline Housing Authy.*, 4 Mass. App. Ct. 705, 708 (1976).

The judgment is reversed, and a new judgment is to enter declaring that the commission had the power to find the plaintiff's disability to be permanent and to discontinue payments under § 63B.

*So ordered.*