LORI B. GREEN & another vs. COMMONWEALTH.

Suffolk.  December 16, 1981. — May 14, 1982.

Present: HALE, C.J., ROSE, ARMSTRONG, BROWN, GREANEY, KASS, & SMITH, JJ.

*Governmental Immunity.  Negligence,* Governmental immunity.  *Metropolitan District Commission.*

The immunity from tort liability enjoyed by the Commonwealth before
    the effective date of the Massachusetts Tort Claims Act, St. 1978,
    c. 512, was not subject to an exception for tortious acts arising from
    activities of a proprietary nature. [526-529]

CIVIL ACTION commenced in the Superior Court on
December 4, 1974.

The case was heard by *Young*, J.

*Christopher H. Worthington*, Assistant Attorney General, for the Commonwealth.

*John L. Murphy, Jr. (John L. Murphy, III*, with him) for
the plaintiffs.

ARMSTRONG, J.  This appeal by the Commonwealth raises
the question whether the general immunity from tort liability which the Commonwealth enjoyed prior to the effective
date of St. 1978, c. 512 (the Massachusetts Tort Claims
Act), was subject to an exception for tortious acts arising
from activities of a proprietary rather than governmental
nature.  Because two recent cases decided by different
panels of this court, *Kerlinsky* v. *Commonwealth*, 7 Mass.
App. Ct. 910 (1979), and *Clarke* v. *Metropolitan Dist.
Commn.*, 11 Mass. App. Ct. 955 (1981), reached results
which were in tacit conflict with respect to that question,
the Chief Justice, after argument of the present appeal,
ordered that the panel be enlarged to include all members of
the panels which had decided the two earlier appeals.  See
Mass.R.A.P. 24(a), 365 Mass. 872 (1974).

The case was tried to a judge of the Superior Court, sitting without jury, who gave a recovery to the plaintiffs for personal injuries and consequential damages which resulted from the negligent supervision of an ice skating rink. The rink was operated by the Metropolitan District Commission, which is neither an independent authority nor (like a municipality) a political subdivision, but is, rather, one of the operating departments of the Commonwealth. *Mitchell* v. *Metropolitan Dist. Commn.*, 4 Mass. App. Ct. 484, 487-488 (1976). The accident occurred prior to August 16, 1977, the effective date of St. 1978, c. 512, which abolished the general rule of sovereign immunity. *Vaughan* v. *Commonwealth*, 377 Mass. 914, 915 (1979). The judge rejected the Commonwealth's claim of immunity, ruling that the operation of the rink, for the use of which admission was charged, was proprietary rather than governmental in nature and that the Commonwealth, like a municipality (see *Bolster* v. *Lawrence*, 225 Mass. 387, 389-390 [1917]; *Whitney* v. *Worcester*, 373 Mass. 208, 214-215 [1977]), was liable for negligent acts committed in pursuance of proprietary functions. In its appeal the Commonwealth contends that the proprietary-governmental distinction was an exception under the common law only to the general principle of municipal immunity and that it had no relevance to the sovereign immunity enjoyed by the Commonwealth.

The Commonwealth finds support in *Kerlinsky* v. *Commonwealth, supra*, a negligence action in which the plaintiffs claimed that the Commonwealth should be held liable for its negligent operation of a swimming area in a public park (the swimming area was roped off, and an admission fee was charged) on the basis that the operation was proprietary rather than governmental in nature. This court held that the complaint had been properly dismissed under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), stating: "The furthest extension of judicial abrogation of sovereign immunity was reached in *Morash & Sons* v. *Commonwealth*, 363 Mass. 612 (1973), where it was held that the Commonwealth could be liable for the creation . . . of a

private nuisance which caused injury to another's land. In cases subsequent to *Morash*, the Supreme Judicial Court has recognized the vitality of the defense of sovereign immunity as to claims based on assertions of negligence . . . ." 7 Mass. App. Ct. at 910, citing, inter alia, *Hannigan* v. *New Gamma-Delta Chapter of Kappa Sigma Fraternity, Inc.*, 367 Mass. 658, 659 (1975).

The plaintiffs find support in *Clarke* v. *Metropolitan Dist. Commn., supra,* an action brought to recover damages for the wrongful death of a boy who had drowned in a swimming pool operated by the same Commonwealth agency which is the defendant in this case. This court reversed a judgment dismissing the complaint, holding that "the plaintiff is entitled to prove that the operation of the swimming pool was a proprietary function . . . ." 11 Mass. App. Ct. at 955-956.

The enlarged panel, having reviewed earlier cases and relevant texts and commentaries, is of the view that the common law of this Commonwealth, as it stood prior to the new Massachusetts Tort Claims Act, did not recognize a proprietary-function exception to the general rule of sovereign immunity. The appellate reports of the Supreme Judicial Court and this court disclose scores, perhaps hundreds, of cases which apply the proprietary-governmental distinction in determining the liability or immunity of a municipality in tort but not a single case prior to *Clarke* which applies the distinction to the Commonwealth. In recent landmark cases the Supreme Judicial Court has discussed the governmental-proprietary distinction only as an aspect of the law of municipal immunity (*Morash,* 363 Mass. at 620-623; *Whitney,* 373 Mass. at 213-215), as does Prosser, who says of municipal corporations that they "are regarded as having a rather curious dual character", being like the State with respect to some functions and like a private corporation with respect to others. "The law has attempted to distinguish between the two functions and to hold that in so far as they represent the [S]tate, in their 'governmental', 'political', or 'public' capacity, they share its immunity

from tort liability, while, in their 'corporate', 'private', or 'proprietary' character they may be liable." Prosser, Torts § 131, at 977-978 (4th ed. 1971).

Harper and James state the common view (which they criticize) to be "that the municipality is the agent or representative of the [S]tate in performing governmental functions and so shares the [S]tate's immunity, but that it has no sovereignty and no immunity of its own." 2 Harper & James, Torts § 29.6, at 1620 (1956). As representative of the traditional view, Harper and James quote *Riddoch* v. *State*, 68 Wash. 329, 334-335 (1912), to the effect that municipalities "are only sovereign and only immune in so far as they represent the [S]tate; . . . their immunity, like their sovereignty, is in a sense borrowed . . . [but] the [S]tate is inherently sovereign at all times and in every capacity." *Id.* at 1617. The same view is expressed in 18 McQuillin, Municipal Corporations § 53.24, at 207-209 (3d rev. ed. 1977), and is reflected in numerous law review articles.[1]

---

[1] Three of the more often cited are Borchard, Government Liability in Tort, 34 Yale L.J. 1, 41-43, 130 n.190 (quoting *Lloyd* v. *New York*, 5 N.Y. 369, 374 [1851] [The city "possesses two kinds of powers: one governmental and public, and to the extent that they are held and exercised, is clothed with sovereignty; the other private, and to the extent that they are held and exercised, is a legal individual. The former are given and used for public purposes, the latter for private purposes. While in the exercise of the former, the corporation is a municipal government, and while in the exercise of the latter, is a corporate, legal individual."]), 229 & n.251 (1924-1925); Seasongood, Municipal Corporations: Objections to the Governmental or Proprietary Test, 22 Va. L. Rev. 910 passim (1936); Fuller & Casner, Municipal Tort Liability in Operation, 54 Harv. L. Rev. 437, 438-442 (1941). The latter article suggests that municipal immunity had its origin in concepts other than sovereign immunity and that "[i]t was not until stare decisis had done its work that the doctrine of sovereign immunity was introduced as a rationalization of the result." *Id.* at 438. See also Liebman, Assault on the Citadel: De-Immunizing Municipal Corporations, 4 Suffolk U.L. Rev. 832, 847-848 & n.54 (1970); Reinhardt, Tort Law — Government Liability — Strict Liability Under the Massachusetts Tort Claims Act, 3 Western New England L. Rev. 609, 610-611 (1981). Needless to say, all of the authorities cited in this footnote are highly critical of both governmental-proprietary distinction and the entire concept of sovereign immunity.

The original Restatement of Torts (1939), reflected the traditional view: "§ 887. CAPACITY. No one, except the State, has complete immunity from liability in tort . . . . Comment . . . c. *Partial immunities.* Municipal corporations, although not liable for torts committed in the course of purely governmental functions, have capacity to be liable for torts otherwise committed . . . ." The Restatement (Second) of Torts (1977), has separate sections for State immunity (§ 895B) and municipal immunity (§ 895C). The first says, "A State and its governmental agencies are not subject to suit without the consent of the State . . .," while the second, reflecting what the law would have been if the restructuring outlined in *Whitney* had gone into effect but not the pre-*Whitney* Massachusetts practice, says: "§ 895C. LOCAL GOVERNMENT ENTITIES: (1) Except as stated in Subsection (2), a local government entity is not immune from tort liability. (2) A local governmental entity is immune from tort liability for acts and omissions constituting (a) the exercise of a legislative or judicial function, and (b) the exercise of an administrative function involving the determination of fundamental governmental policy." There is an annotation on the subject at 40 A.L.R. 2d 927 (1955), to which a 1980 update (40 A.L.R.2d Later Case Service at 81-83) shows several courts departing from the traditional view and applying the proprietary-function test to the State. Such cases, we think, reflect a general, widespread trend to whittle away judicially at the doctrine of sovereign immunity, but no Massachusetts case had employed that particular method of reducing the scope of Commonwealth immunity prior to the Tort Claims Act.

In Massachusetts the *Morash* and *Whitney* cases made it clear that sovereign immunity would be abrogated judicially if the Legislature elected not to act with respect to the subject. An outline of the manner in which this was to be done was set out in the *Whitney* case, 373 Mass. at 216-224, and it did not include reliance on the proprietary-governmental distinction, which the Supreme Judicial Court criticised as untenable both in the *Morash* case (363 Mass. at

620-623) and in the *Whitney* case (373 Mass. at 215 & n.9). After the Legislature passed the new Tort Claims Act, the Supreme Judicial Court held that cases which arose prior to its effective date were to be governed by the established common law principles in effect prior thereto. *Vaughan* v. *Commonwealth*, 377 Mass. at 915 ("When *Whitney* is read correctly, it becomes even more clear that we should not modify the law now established by a comprehensive statute").

Prior to the legislative determination the Morash exception for private nuisance was the only judicially created exception to the otherwise general principle that the Commonwealth was immune from tort liability absent a clear statutory authorization to the contrary. *Morash*, 363 Mass. at 619 ("We [overrule the doctrine of sovereign immunity] *to the limited extent* of holding that the Commonwealth is not immune from liability if it creates or maintains a private nuisance . . ." [emphasis supplied]). Mone & Kelly, "Torts," 1978 Ann. Survey Mass. Law § 13.2, at 297-298. Were we to affirm the judgment in this case, we would, in effect, be creating a second judicial exception to the Commonwealth's common-law tort immunity, contrary to the policy followed in the *Vaughan* case. We are of the opinion that the *Kerlinsky* case represents a correct statement of the law in effect prior to the effective date of the Tort Claims Act, and we accordingly decline to follow the holding of the *Clarke* case.

It follows that the judgment for the plaintiffs must be reversed and that a new judgment must enter for the Commonwealth.

*So ordered.*