ALAN PINSHAW *vs.* METROPOLITAN DISTRICT COMMISSION.

Suffolk.    January 6, 1988. — June 30, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Massachusetts Tort Claims Act. Indemnity. Public Employment,* Indemnification of employee. *Metropolitan District Commission,* Police. *Police,* Commonwealth's liability. *Agency,* Scope of authority or employment. *Civil Rights,* Damages. *Collateral Estoppel. Statute,* Construction. *Attorney General. Attorney at Law,* Conflict of interest. *Conflict of Interest. Words,* "Wilful, wanton, or malicious."

General Laws c. 258, § 9A, providing for indemnification by the Commonwealth of its police officer employees, supplants the provisions of a prior indemnification statute, G. L. c. 92, § 63B, with respect to civil rights and intentional tort actions brought against those police officers. [691-693]

In a civil action brought by the assignee of a police officer's right to indemnification by the Commonwealth under G. L. c. 258, § 9A, for financial loss resulting from a judgment in Federal court against the officer for his violation of 42 U.S.C. § 1983 (1982), the judge erred in granting the Commonwealth's motion for summary judgment where there were two unresolved issues of material fact: whether the police officer had acted within the scope of his official duties within the meaning of § 9A [694-696]; and then whether he had acted in a "wilful, wanton, or malicious" manner within the meaning of § 9A, so as to bar indemnification [696]. LYNCH, J., dissenting, with whom O'CONNOR, J., joined.

The "wilful, wanton, or malicious" conduct of a police officer such as would bar his indemnification by the Commonwealth under the provisions of G. L. c. 258, § 9A, for civil actions arising from his violation of civil rights, is "egregious" conduct that would warrant imposition of punitive damages in the underlying action. [697]

In a civil action, the plaintiff, assignee of a police officer's right to indemnification by the Commonwealth under G. L. c. 258, § 9A, for a Federal court judgment against the officer for violation of the plaintiff's civil rights, was not automatically entitled to indemnification on the theory that the Federal jury had not awarded punitive damages and had thus determined the officer's conduct was not "egregious," where that verdict did not preclude a finding that the conduct of the police officer was "wilful, wanton, or malicious", i.e., "egregious," so as to bar his indemnification under § 9A. [697-698]

On an appeal from a grant of summary judgment for the Commonwealth against a plaintiff seeking to enforce, under an assignment, a police officer's right of indemnification under G. L. c. 258, § 9A, with respect to an award in Federal court for the officer's violation of the plaintiff's civil rights, the record was insufficient for a determination whether the Federal jury verdict necessarily included a finding that the officer's conduct was "wilful, wanton, or malicious" within the meaning of § 9A. [698-700] LYNCH, J., dissenting, with whom O'CONNOR, J., joined.

The court advised that in indemnification actions arising under G. L. c. 258, § 9A, the Commonwealth, to avoid claims of attorney conflict of interest, should follow the procedures outlined in G. L. c. 258, § 2, second par. [700-701]

CIVIL ACTION commenced in the Superior Court Department on February 15, 1984.

The case was heard by J. Harold Flannery, J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

Howard Friedman for the plaintiff.

Despena Fillios Billings, Assistant Attorney General, for the defendant.

ABRAMS, J. Through an assignment of rights, the plaintiff, Alan Pinshaw, seeks to enforce Metropolitan District Commission (MDC) Officer Frederick Monk's rights to indemnification under G. L. c. 92, § 63B, added by St. 1948, c. 653,[1] and G. L. c. 258, § 9A, added by St. 1982, c. 345.[2] Both parties

---

[1] General Laws c. 92, § 63B, provides in relevant part: "The [MDC] shall, subject to appropriation, indemnify a metropolitan district police officer, to an amount not more than the amount recommended by said commission, for expenses or damages sustained by him while acting as a police officer, or incurred by him in the defense or settlement of an action brought against him for acts done by him while so acting; provided, that the defense or settlement of such claim shall have been made by the attorney general; and such damages shall include loss of pay by reason of absence from duty on the part of such officer because of temporary incapacity caused by injury suffered through no fault of his own while in the actual performance of duty . . . ."

[2] General Laws c. 258, § 9A, provides in relevant part: "If, in the event a suit is commenced against a member of . . . the metropolitan district police . . . by reason of a claim for damages resulting from an alleged

moved for summary judgment on a statement of agreed facts and supporting documents. The Superior Court judge granted the defendant's motion for summary judgment. We granted direct appellate review. We reverse and remand for further proceedings.

We summarize the agreed facts. On August 28, 1978, the plaintiff stopped his car on Brookline Avenue, near Fenway Park, to ask directions from Monk, who was on duty in uniform directing traffic. Monk ordered the plaintiff to move on. The plaintiff found Monk's manner uncivil and threatening. After parking, the plaintiff walked back to speak to Monk, who now ordered the plaintiff to leave the intersection. The plaintiff again found Monk's manner inappropriate. Later that evening, the plaintiff telephoned the MDC to complain about Monk's actions. The plaintiff followed up the complaint with a letter to Monk's direct superior, Captain Kenneth Elliott. Elliott notified his supervisor, Deputy Superintendent John McDonough, of the complaint, and McDonough sent the plaintiff a letter stating that Elliott would investigate the matter.

Elliott advised Monk of the civilian complaint and requested a report on the incident. Monk responded by seeking a criminal complaint against the plaintiff in the Roxbury District Court for failing to comply with an order to move his car on request of an MDC officer, a violation of MDC Rule 7. According to

intentional tort or by reason of an alleged act or failure to act which constitutes a violation of the civil rights of any person under federal or state law, the commonwealth, at the request of the affected officer, shall provide for the legal representation of said police officer.

"The commonwealth shall indemnify members of . . . the metropolitan district police . . . from all personal financial loss and expenses, including but not limited to legal fees and costs, if any, in an amount not to exceed one million dollars arising out of any claim, action, award, compromise, settlement or judgment resulting from any alleged intentional tort or by reason of an alleged act or failure to act which constitutes a violation of the civil rights of any person under federal or state law; provided, however, that this section shall apply only where such alleged intentional tort or alleged act or failure to act occurred within the scope of the official duties of such police officer.

"No member of . . . the metropolitan district police . . . shall be indemnified for any violation of federal or state law if such member . . . acted in a wilful, wanton or malicious manner."

Monk, he did not bring charges earlier because he did not know the plaintiff's name. McDonough and Elliott suspended their investigation when they learned that Monk obtained a criminal complaint.[3] They "believed that the merits of the incident would be settled in the Roxbury District Court." The District Court judge found the plaintiff guilty and imposed a fine. On appeal, a Superior Court judge dismissed the complaint. Despite the dismissal, the MDC never reopened its investigation on Monk's conduct and never disciplined him. Following the District Court trial, McDonough and Elliott felt "the matter was resolved."

The plaintiff subsequently filed a civil rights action against Monk[4] in Federal court pursuant to 42 U.S.C. § 1983 (1982). The plaintiff alleged that Monk initiated the criminal prosecution against him in retaliation for the complaint he filed with the MDC, and that the prosecution violated his right to petition the government for redress of grievances. After jury trial, the plaintiff was awarded $3,500 in compensatory damages. He later was awarded $5,356.17 in attorney's fees. Punitive damages were sought, but the jury did not award them.

While the civil rights action was pending, Monk filed a bankruptcy petition. The plaintiff filed an adversary complaint in the bankruptcy proceeding, and the parties resolved the dispute by entering an agreement for judgment that the civil rights judgment was nondischargeable under 11 U.S.C. § 523 (a)(6) (1982).[5] After the agreement for judgment in bankruptcy, Monk assigned all his entitlement to indemnification from the MDC and the Commonwealth resulting from the civil rights case to the plaintiff.

---

[3] Monk's official duties included enforcement of traffic laws and regulations in court. Monk acted as police prosecutor at the criminal proceeding. Pursuant to standard MDC practices, he was paid for "court time" during the prosecution of Pinshaw.

[4] McDonough and Elliott were joined as defendants, but the claims against them were dismissed.

[5] The statute excepts from discharge in bankruptcy "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."

After the civil rights trial, and pursuant to the assignment from Monk, the plaintiff requested indemnification from the MDC. The commissioner denied the request, because, in his opinion, Monk had acted beyond the scope of his employment when he prosecuted the plaintiff. The plaintiff then filed the present action in the Superior Court. The Superior Court judge granted summary judgment for the MDC. The judge concluded that, based on the agreed facts, Monk had acted outside the scope of his employment and therefore was not entitled to indemnification under either G. L. c. 92, § 63B, or c. 258, § 9A.

On appeal, the plaintiff asserts that, as a matter of law, he is entitled to indemnification. Alternatively, he argues that his entitlement to indemnification depends upon resolution of genuine issues of material fact, and that the judge therefore erred in granting the defendant's motion for summary judgment. We agree that summary judgment was inappropriate.

1. *The statutory framework.* The plaintiff seeks indemnification under two statutes, G. L. c. 92, § 63B, and c. 258, § 9A. The parties dispute which statute applies. The plaintiff argues that § 9A, which became effective after the award of compensatory damages in his Federal civil rights case (but before the award of attorney's fees), cannot be applied retroactively to deny him rights he had under § 63B.[6] The defendant contends that the requirements of the statutes are cumulative or, in the alternative, that § 9A governs entitlement to indemnification in this case. We conclude that § 9A governs.

---

[6] The plaintiff's theory of retroactivity is that Monk became entitled to indemnification under § 63B immediately upon entry of the compensatory damage award in Federal court. However, the Federal action did not determine the prerequisites for indemnification under either § 63B or § 9A. Such determination was sought only after the plaintiff sought indemnification, which he did after § 9A was in effect. As explained, *infra*, § 9A is a procedural and remedial provision, and its retroactive application is permissible because it does not affect any substantive rights Monk or the plaintiff previously had. See *Commonwealth* v. *Greenberg*, 339 Mass. 557, 578-579 (1959). Cf. *Nantucket Conservation Found., Inc.* v. *Russell Management, Inc.*, 380 Mass. 212 (1980).

General Laws c. 92, § 63B, was enacted in 1948. The statute provides indemnification for MDC officers in two situations: where an officer suffers financial loss from his own injury in the line of duty, see *Montague* v. *Commissioner of the Metropolitan Dist. Comm'n*, 9 Mass. App. Ct. 62 (1980), and where an officer must pay damages for harm to a third person caused "while acting as a police officer." The statute draws no distinction between negligent and intentional harm caused by an officer.

In 1978, the Massachusetts Tort Claims Act, G. L. c. 258, effectively repealed § 63B as to negligent harm caused by MDC officers. The tort claims act expressly provides that public employers, including the MDC, are directly liable for negligent harm caused by public employees acting within the scope of their employment. G. L. c. 258, § 2, first par.

We conclude that § 9A of c. 258, added by St. 1982, c. 345, likewise supplants § 63B in cases involving intentional torts and civil rights violations. Section 9A deals expressly with intentional torts and civil rights violations. It defines specific prerequisites for indemnification in such cases; it covers all police officers employed directly by the Commonwealth; and it provides for the officers' legal representation. In short, it provides a specific, comprehensive system for indemnification of certain police officers in civil rights and intentional tort cases.[7]

The differences between § 63B and § 9A are as follows. Under § 63B, the MDC indemnified the officer; under § 9A, the Commonwealth is directly responsible for indemnification.[8]

---

[7] The statute applies to "member[s] of the state police, the [MDC] police, the capitol police, the registry of motor vehicle police or an employee represented by state bargaining unit five." G. L. c. 258, § 9A, as amended by St. 1984, c. 457.

[8] The plaintiff failed to join the Commonwealth as a named party in this litigation. However, the MDC "is neither an independent authority nor (like a municipality) a political subdivision, but is, rather, one of the operating departments of the Commonwealth." *Green* v. *Commonwealth*, 13 Mass. App. Ct. 524, 525 (1982). Moreover, the Attorney General, who represents the Commonwealth in litigation, represents the MDC in this action. Thus, the Commonwealth has knowledge of this action and its potential liability. In light of our conclusion that § 9A applies, the Commonwealth, on remand, should be joined as a defendant.

Under § 63B, the MDC determined the amount of indemnification "subject to appropriation" and approval by the Attorney General; under § 9A the Commonwealth must provide full indemnification subject to a one million dollar limit (not relevant in this case). Section 63B provided indemnification for acts done "while acting as a police officer"; § 9A covers acts "within the scope of the official duties of [the] officer."[9] Finally, under § 63B the MDC could exercise discretion to determine an officer's entitlement to indemnification, see *Montague v. Commissioner of the Metropolitan Dist. Comm'n, supra* at 64; under § 9A, if indemnification is disputed, the officer's entitlement is determined in the Superior Court.[10] "[W]here two statutes are inconsistent and mutually repugnant, the later statute governs." *Mirageas v. Massachusetts Bay Transp. Auth.*, 391 Mass. 815, 819 (1984).[11]

---

[9] Section 9A also contains an express exclusion of indemnification for "wilful, wanton, or malicious" acts. Although this exclusion does not appear on the face of § 63B, we determine that the "acting as a police officer" requirement in § 63B, along with the MDC's discretion to determine whether the officer was so acting, is sufficient to support reading a similar exclusion into § 63B. We therefore read the exclusion in § 9A merely as making explicit that which was implicit in § 63B.

[10] No statutory provision is made for administrative determination of the Commonwealth's mandatory duty to indemnify an officer under G. L. c. 258, § 9A. Claims against the Commonwealth under c. 258, "except as otherwise expressly provided . . . may be enforced in the superior court." G. L. c. 258, § 12 (1986 ed.).

In *Filippone v. Mayor of Newton*, 392 Mass. 622, 630 (1984), we said that, under G. L. c. 258, § 9, a determination whether an employee is entitled to indemnification "would rest in the sound discretion of the public employer." Section 9, unlike § 9A, deals with permissive, not mandatory, indemnification of public employees. Moreover, § 9 applies to the entire spectrum of public employers in the Commonwealth, see G. L. c. 258, § 1, whereas § 9A is limited to police officers employed directly by the Commonwealth. Even where permissive indemnification is involved, we did not limit the scope of review of the public employer's determination. Unless the employer is an "agency" within the meaning of the State Administrative Procedure Act, see G. L. c. 30A, § 1, and its determination is made in an "adjudicatory proceeding," *id.*, the limits on judicial review in G. L. c. 30A, § 14, do not apply.

[11] To the extent that the two statutes are not inconsistent, we read them "together so as to constitute an harmonious whole consistent with the legislative purpose." *Registrar of Motor Vehicles v. Board of Appeal on Motor*

2. *Summary judgment.* We will affirm an order for summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See, e.g., *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983); *Godbout* v. *Cousens*, 396 Mass. 254, 257 (1985). Because there are at least two issues of material fact unresolved, summary judgment was not appropriate for either party.

The first factual issue is whether Monk's violation of the plaintiff's civil rights (the criminal prosecution) "occurred within the scope of [Monk's] official duties." G. L. c. 258, § 9A. We have not had occasion to consider "the scope of . . . official duties" under § 9A. However, under the parallel provision in § 9 (indemnification of other public employees), we apply common law respondeat superior principles. *Howard* v. *Burlington*, 399 Mass. 585, 589-590 (1987). We conclude that the same principles apply under § 9A.

"The general respondeat superior test involving intentional torts considers whether the act was within the course of employment, and in furtherance of the employer's work." *Howard* v. *Burlington, supra* at 590, and cases cited. In determining the scope of employment, the finder of fact must consider whether the conduct complained of is of the kind the employee is hired to perform, whether it occurs within authorized time and space limits, and whether "it is motivated, at least in part, by a purpose to serve the employer." *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 859 (1986). See Restatement (Second) of Agency § 228 (1958). Monk's conduct clearly was of the kind he was hired to perform. See note 3, *supra.* The issue is Monk's motivation.

If an employee "acts from purely personal motives . . . in no way connected with the employer's interests, he is consid-

*Vehicle Liab. Policies & Bonds,* 382 Mass. 580, 585 (1981). Thus, § 63B still governs indemnification of MDC officers for losses suffered as a result of their own injury in the line of duty.

ered in the ordinary case to have departed from his employment, and the master is not liable." W. Prosser & W. Keeton, Torts 506 (5th ed. 1984). See *Miller* v. *Federated Dept. Stores, Inc.*, 364 Mass. 340, 348 (1973). However, "[t]he fact that the predominant motive of the [employee] is to benefit himself does not prevent the act from coming within the scope of employment as long as the act is otherwise within the purview of his authority." *Wang Labs., Inc.* v. *Business Incentives, Inc., supra* at 859-860. See *Coleman* v. *Smith*, 814 F.2d 1142 (7th Cir. 1987) (intentional false arrest); W. Prosser & W. Keeton, *supra* at 506-507. "If the act complained of was within the scope of the servant's authority, the master will be liable, although it constituted an abuse or excess of the authority conferred. The master . . . is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury on a third person." *Kent* v. *Bradley*, 480 S.W.2d 55, 57 (Tex. Civ. App. 1972). See *Johnson* v. *Weinberg*, 434 A.2d 404, 408 (D.C. App. 1981). Where a party's state of mind or motive is in issue, summary judgment is disfavored. *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 86 (1984).

The judge concluded that, based on the agreed facts, Monk did not act within the scope of his employment, because he initiated "a private counter-attack or personal vendetta" against the plaintiff, which "no one, including Monk and the plaintiff, could reasonably believe . . . was furthering the mission of the MDC." The parties, however, did not stipulate as to Monk's subjective motivation. Monk alleges that he delayed bringing the prosecution because he did not know the plaintiff's name. Even if Monk was motivated by a degree of vindictiveness, he also may have believed he was serving his employer in prosecuting the plaintiff, and that the plaintiff violated an MDC regulation. Prosecution of criminal complaints for violations of MDC regulations is part of Monk's job. The fact that Monk's superiors knew of the retaliatory action is some evidence that they may have endorsed or ratified Monk's action. See Restate-

ment (Second) of Agency § 218 (1958); *Pusateri* v. *E.F. Hutton & Co.*, 180 Cal. App. 3d 247 (1986). Whether Monk acted within the scope of his official duties within the meaning of § 9A is a question of fact.[12]

The second factual question is whether Monk "acted in a wilful, wanton, or malicious manner." G. L. c. 258, § 9A. We have not yet considered the scope of this exclusion to indemnification. However, "[p]rovisions for indemnity should be construed in a manner which will effectuate their purpose." *Filippone* v. *Mayor of Newton*, 392 Mass. 622, 628 (1984). The purpose of § 9A is to provide an exception to the general rule excluding public liability for intentional torts of public employees.[13] The mandatory indemnification statute evidences the Legislature's determination that intentional torts and civil rights violations arise frequently in the scope of police work, and that indemnification of officers against such claims encourages police service. Cf. *Howard* v. *Burlington, supra* at 591. Because intentional torts, by definition, involve some element of "wilfulness," a literal reading of the exclusion would frustrate the express purpose of § 9A, and thus must be rejected. "The words of a statute will not be read literally if to do so would be inconsistent with legislative intent." *Oxford* v. *Oxford Water Co.*, 391 Mass. 581, 592 (1984). *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 336 (1982). See *Commonwealth* v. *Neiman*, 396 Mass. 754, 757 (1986).

---

[12] The trial judge correctly noted that § 9A expressly bars indemnification for acts which are "wilful, wanton, or malicious." However, an employee clearly may act in a manner which is, in some sense, "wilful, wanton, or malicious," yet remain within the scope of employment. See *Wang Labs., Inc.* v. *Business Incentives, Inc., supra*; *Coleman* v. *Smith, supra*; W. Prosser & W. Keeton, *supra*. Although malice or wilfulness is inextricably interwoven with motivation, a distinction must be drawn between "malice" as a bar to recovery under the statutory exclusion in § 9A and personal motive as an element of determining whether an officer acted within the scope of his employment.

[13] Public liability generally is excluded in cases involving "any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations." G. L. c. 258, § 10 (*c*).

We conclude that, for purposes of § 9A, in a civil rights context "wilful, wanton, or malicious" conduct means egregious conduct which would warrant imposition of punitive damages in the underlying action. In Federal civil rights actions, which are among the actions for which § 9A provides indemnity, the United States Supreme Court has interpreted the terms "malice," "wanton," and "wilful" to constitute a standard for punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith* v. *Wade*, 461 U.S. 30, 39-40 n.8, 56 (1983). Linking the exclusion from indemnification to the standard for punitive damages achieves the Legislature's clear intent; it indemnifies officers for intentional torts and civil rights violations occurring within the scope of their official duties, yet excludes indemnification in egregious cases. It also provides a bright line test for precluding indemnification where punitive damages are awarded in the underlying action.

We reject the plaintiff's assertion that he automatically is entitled to indemnification under § 9A, because the jury in the Federal civil rights action did not award punitive damages. A failure to award punitive damages, unlike a verdict awarding them, does not establish facts that are binding in future litigation. Punitive damages under § 1983 are not mandatory, "no matter how egregious the defendant's conduct." *Smith* v. *Wade*, *supra* at 52. The award of punitive damages is "a discretionary moral judgment" made after the plaintiff proves sufficiently serious misconduct on the defendant's part. *Id.* The Federal jury verdict therefore does not preclude a finding that Monk took himself outside the coverage of § 9A when he prosecuted the plaintiff. Whether he did is a question to be determined by the finder of fact.[14] See *Karas* v. *Snell*, 11 Ill.2d 233, 244-245 (1957).

---

[14] We likewise reject the Commonwealth's assertion that the agreement for judgment in bankruptcy declaring the civil rights judgment nondischargeable under 11 U.S.C. § 523(a)(6) (1982), precludes recovery under § 9A. The bankruptcy statute excepts from discharge debts which arise from "willful and malicious" injury. However, "willful and malicious" con-

The dissent incorrectly argues that the Federal jury verdict precludes indemnification because that verdict necessarily included a finding that Monk's action was "wilful, wanton, or malicious." "[I]t is a condition of such 'issue preclusion' (terminology now favored over 'collateral estoppel') that the determination to be carried over shall not only have been litigated in the first action, but shall have been essential to the judgment in that action." *Rudow* v. *Fogel*, 376 Mass. 587, 591 (1978). *Wishnewsky* v. *Saugus*, 325 Mass. 191, 195 (1950). Restatement (Second) of Judgments § 27 & comments i and j (1982). Issue preclusion is inappropriate because it is impossible to determine on the record before us whether the jury had to find Monk's action "wilful, wanton, or malicious" to award compensatory damages under 42 U.S.C. § 1983 (1982).

The fact that the plaintiff alleged "malice" in the civil rights complaint does not establish that "wilful, wanton, or malicious" conduct was essential to the judgment.[15] The complaint, which

---

duct under the bankruptcy statute includes conduct which is more than merely negligent or inadvertent. E.g., *In re Katz*, 20 B.R. 394, 397 (Bkrcy. Mass. 1982). A judgment of nondischargeability does not require a determination that punitive damages would be warranted. In addition, a consent judgment generally is not given preclusive effect in future litigation, unless the judgment manifests an intent of the parties that it have such effect. See Restatement (Second) of Judgments § 27 comment e (1982); 18 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 4443 (1981). The plaintiff's acceptance of an assignment of rights to indemnification from Monk *after* the bankruptcy judgment undercuts any notion that the agreement for judgment was intended to cut off Monk's right to indemnification. Thus, the agreement for judgment in bankruptcy is not determinative of the exclusion under § 9A.

[15] It also is irrelevant that the plaintiff alleged the common law tort of malicious prosecution as an alternative theory of recovery in the Federal court action. We do not have before us a special verdict indicating the theory on which the jury awarded compensatory damages. Because it is unclear which theory the jury accepted, preclusion as to the issue of "malice," an element of the common law tort, *Beecy* v. *Pucciarelli*, 387 Mass. 589, 593-596 (1982), but not necessarily of § 1983, is inappropriate in this litigation. See *Commonwealth* v. *Bunting*, 401 Mass. 687, 691 n.7 (1988), and cases cited.

The parties have not argued the issue, and we do not determine whether "improper motive," which constitutes the standard for "malice" in malicious prosecution, *Beecy* v. *Pucciarelli, supra* at 594 n.9, is in all cases necessarily the same as "evil motive or . . . reckless or callous indifference to the . . .

is the only guide in the present record as to what transpired in the Federal court, includes allegations of violations of the plaintiff's rights under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States. It is not clearly the case that an award of compensatory damages under § 1983 on every one of these theories necessarily requires a finding of "wilful, wanton, or malicious" conduct. See *Parratt* v. *Taylor*, 451 U.S. 527, 534 (1980) (§ 1983 contains no state of mind requirement); *Daniels* v. *Williams*, 474 U.S. 327, 330 (1986) (depending on the violation alleged, plaintiff may have to prove defendant's particular state of mind). Standing alone, the complaint does not indicate which issues or questions of fact were essential to the judgment; it does not reveal the proof developed at trial, the theory or theories of law on which the judge instructed the jury, or the basis for the jury's verdict.[16] Issue preclusion attaches only to "issues or questions of fact actually litigated and determined, not those that merely lurk in the record before the court." *In re Four Seasons Securities Laws Litigation*, 370 F. Supp. 219, 235 (D. Okla. 1974). *Brown* v. *Felsen*, 442 U.S. 127, 139 n.10 (1979). See 18 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 4420, at 182, 183 (1981). On remand, it is open to the Commonwealth

---

rights of others," which constitutes the standard for "wilful, wanton, or malicious" conduct under § 9A. See *Smith* v. *Wade*, *supra* at 53 & n.16.

[16] The immunity standard in *Gildea* v. *Ellershaw*, 363 Mass. 800 (1973), cited by the dissent, is not clearly relevant to the Federal jury verdict. *Gildea* sets the immunity standard only for State law claims asserted against public officials performing "discretionary functions." *Breault* v. *Chairman of the Bd. of Fire Comm'rs of Springfield*, 401 Mass. 26 (1987), cert. denied,    U.S.    (1988) (108 S. Ct. 1078 [1988]). It does not apply to Federal law claims, which are governed by a different immunity standard not requiring subjective bad faith, *id.* at 31-34, and does not apply to acts which are not "discretionary" under State law. *Id.* at 34-38. The Federal court action in this case included claims under both State and Federal law. There is no indication in the record which immunity standard, if any, was presented to the Federal jury. Nor is there any indication whether the Federal court judge determined the defendant's actions to be "discretionary." Indeed, the defendant may have failed to raise an immunity defense in the Federal action, and thereby waived it. We cannot tell on the present record. We express no opinion on the question whether the standard for "malice" under *Gildea* is the same as the standard for "wilful, wanton, or malicious" conduct under § 9A.

to attempt to establish that the Federal jury verdict necessarily included a finding that Monk "acted in a wilful, wanton, or malicious manner." We cannot determine that issue on the present record.

3. *Conflict of interest.* Although neither party raises the issue, we comment on the conflict of interest that may arise in indemnification actions under § 9A. The Commonwealth, at the request of the affected police officer, is required to provide for the officer's legal representation in a tort or civil rights action. In this case, the office of the Attorney General of the Commonwealth represented Monk in the Federal court civil rights action. The Attorney General's office now represents the MDC. Although different attorneys handled the two cases, the potential obviously exists for the same lawyer to represent an officer in a civil rights or intentional tort case, and represent the Commonwealth in a subsequent action opposing the officer's claim to indemnification. Even if different attorneys handle the two cases, a conflict may arise; confidential information from the first action might be used against the officer in the second.[17] To avoid claims of conflict of interest, the Commonwealth would be wise to follow the procedures outlined in G. L. c. 258, § 2, second par.,[18] and, in cases where the Commonwealth plans to challenge the right to indemnification, reimburse the officer for reasonable attorney's

---

[17] No allegations of any such impropriety are made in this case. We note, however, that the assistant attorney general who represented Monk in Federal court answered interrogatories for the MDC in the present indemnification action.

[18] General Laws c. 258, § 2, second par., provides in relevant part: "The public attorney shall defend the public employee . . . at no cost to the public employee; provided, however, that the public attorney determines that [no exception to public liability applies] . . . . If, in the opinion of the public attorney, representation of the public employee . . . would result in a conflict of interest, the public attorney shall not be required to represent the public employee. Under said circumstances, the commonwealth shall reimburse the public employee for reasonable attorney fees incurred by the public employee in his defense of the cause of action; provided, however, that the same conditions exist which are required for representation of said employee by the public attorney under this paragraph."

fees incurred in defense of the underlying action.[19] If the officer is found liable in that action, a subsequent action by or against the Commonwealth can determine whether an exception to indemnification applies. If an exception applies, the Commonwealth might then recover from the officer those funds expended for legal services on his or her behalf. See *Filippone* v. *Mayor of Newton, supra* at 630.*

*Judgment reversed.*

LYNCH, J. (dissenting, with whom O'CONNOR, J., joins). In the circumstances of this case, it is clear that Monk acted maliciously and, hence, that the exception in the indemnification statute for "wilful, wanton, or malicious" acts applies. The Federal § 1983 action contained two counts against Monk. Count I of the complaint alleged that Monk "illegally and maliciously instituted a criminal process against the plaintiff in order to punish the plaintiff." Count II, which was for malicious prosecution, contained the same allegation and added that "[t]he prosecution commenced by . . . Monk was instituted . . . without basis and maliciously and with intent to harm the plaintiff." The jury's verdict was for the plaintiff. Therefore, whether under Count I or Count II, the jury must have based its verdict on conduct of Monk that was malicious in the sense that it was not only intentional, but was solely intended to harm and punish the plaintiff. It cannot be that the Legislature intended that police officers be indemnified for harm caused by

---

[19] Alternatively, the Commonwealth may follow the procedure open to a liability insurer which discovers a probable basis for disclaiming a duty to indemnify its insured; the Commonwealth may, with the informed consent of the officer, retain control of defense of the underlying action under a reservation of rights. See *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. 677, 682-683 (1964); *Salonen* v. *Paanenen*, 320 Mass. 568, 573-575 (1947). See also *Employers' Liab. Assurance Corp.* v. *Vella*, 366 Mass. 651, 657 (1975); R.E. Keeton, Insurance Law 501-505 (1970). We do not reach the issue whether an officer may decline representation by the Commonwealth under a reservation of rights and insist on reimbursement for private counsel. See *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. 271, 276 (1970).

* After this opinion was issued the Attorney General filed an affidavit indicating that the assistant attorney general in this case did not discuss merits of the case with the assistant attorney general who represented the police officer in the civil rights action and that no confidential information was exchanged or used. The plaintiff does not challenge the affidavit, see note 17, *supra*, and we therefore accept it as accurate.

their intentional acts done for the exclusive purpose of causing harm to and punishing another. See *Gildea* v. *Ellershaw*, 363 Mass. 800, 820 (1973).

Furthermore, the judge's conclusion that Monk did not act within the scope of his employment because he initiated a "private counter-attack or personal vendetta" against the plaintiff was correct. The plaintiff alleged in the Federal action that Monk's allegations against him were not only false but known by Monk to be false. In the context of this case that conclusion was not a question of fact to be determined by the jury in the State action because it had already been decided by the Federal jury on the basis of the plaintiff's own allegations. Pinshaw's State claim is based upon, and is wholly dependent on, the Federal action. He is, therefore, precluded from asserting facts that are contrary to those upon which the Federal judgment was based. *Massachusetts Property Ins. Underwriting Ass'n* v. *Norrington*, 395 Mass. 751, 753 (1985). *Fidler* v. *E.M. Parker Co.*, 394 Mass. 534, 539 (1985).

I accept for the purposes of argument the court's view that § 9A excludes from indemnification only egregious conduct, conduct "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others," *ante* at 697, quoting *Smith* v. *Wade*, 461 U.S. 30, 39 n.8, 56 (1983), because the bringing of a criminal charge known to be false for the sole purpose of harming and punishing the plaintiff fits within even that restrictive definition of malicious conduct. In effect, the judge was ruling on the summary judgment motion on the basis of a jury finding that the criminal action had been brought for a malicious purpose.

I, therefore, respectfully, dissent.