Samuel COLEMAN, Plaintiff-Appellee, Cross-Appellant,

v.

Marion SMITH and Gordon Frierson, Defendants-Appellants, Cross-Appellees,

and

Village of Robbins, Defendant-Appellant.

Nos. 85–1769, 85–1770, 85–3081 and 85–3084.

United States Court of Appeals, Seventh Circuit.

Argued June 11, 1986.

Decided Jan. 20, 1987.*

As Amended Feb. 10 and March 11, 1987.

---

\* A Petition for Rehearing with Suggestion for Rehearing *En Banc* was filed by appellants but was dismissed by the court after the litigants advised the court that the parties had reached a settlement.

Hal Ross Kessler, Kessler & Ex, Chicago, Ill., Mark H. Sterk, Odelson & Associates, Ltd., Evergreen Park, Ill., John K. Kneafsey, Chicago, Ill., for defendants-appellants, cross-appellees.

Abraham N. Goldman, Abraham N. Goldman & Assoc. Ltd., Chicago, Ill., for plaintiff-appellee, cross-appellant.

Before WOOD and COFFEY, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

These appeals emanate from a civil rights action filed pursuant to 42 U.S.C. § 1983 by the former Special Investigator of the Village of Robbins against the former mayor, the former chief of police, and the Village itself. The original action challenged plaintiff's firing and later false arrest on charges of impersonating a police officer. Three issues are presented on this appeal: (1) whether the trial court erred in granting a default judgment; (2) whether the court abused its discretion in denying a Fed.R.Civ.P. 60(b) motion filed by two of the defendants to vacate the default judgment; and (3) whether the court was justified in denying to the two individual defendants indemnification from the municipality.

We conclude that the trial court did not err in granting the default judgment or in denying the Fed.R.Civ.P. 60(b) motion, but that it did err in failing to require the Village to underwrite the judgment assessed against the former mayor and the former chief of police because they were both acting within the scope of their employment.

The factual background of the case and the procedural history leading to the default judgment are set forth in two published opinions by the trial judge. They appear at 556 F.Supp. 460 (N.D.Ill.1983), and 101 F.R.D. 541 (N.D.Ill.1984). We shall, nonetheless, briefly sketch both the historical and procedural facts.

Beginning in 1948, Samuel Coleman served as a police officer for the Village of Robbins ("the Village"), a Chicago suburb. In 1977 the Village's Board of Trustees appointed Coleman to investigate reports of corruption within its police force. He found evidence of widespread police corruption, which also implicated Marion Smith, the Village mayor. In April 1978 Coleman reported his findings to the Board and the Cook County State's Attorney.

Without the Board's approval, Smith fired Coleman in an attempt to suppress the investigation. He also abolished the police department and asked the County Sheriff's officers to patrol the Village. Despite the mayor's efforts to terminate his employment, Coleman continued his investigation, and later in 1978 the Board renewed his appointment as special investigator. Smith refused to approve the Board's action. Coleman continued, however, in his investigatory role and in early 1979 report-

ed to the Board that the Village's chief of police, Gordon Frierson, had attempted to obtain free services from certain Village business establishments. Frierson was reprimanded by the Board.

Thereafter Smith, Frierson, and unknown others decided to retaliate against Coleman. In June 1979 Frierson arrested Coleman in his home without a warrant and charged him with illegally impersonating a police officer. The charges were dismissed by the Cook County Circuit Court.

On the basis of these facts, as pleaded in his complaint, Coleman brought suit in the federal district court under section 1983, alleging that his constitutional rights had been violated and asking for both compensatory and punitive damages. Although other individuals were named defendants, only the Village, Smith, and Frierson remained such at the time the default judgment was entered on April 23, 1984.

Following a default judgment on liability, a jury trial was held solely on the issue of damages. The jury returned a verdict in varying amounts: (1) against Smith, $250,000 in compensatory damages for physical, mental, and emotional injury and $100,000 in punitive damages; (2) against Frierson, $125,000 in compensation for the same injuries charged to Smith and $100,000 in punitive damages; (3) against Smith and Frierson jointly and severally, $3,000 in compensatory damages for legal and medical expenses; and (4) against the Village, $34,000 in lost wages plus $14,842 in interest.

The three defendants moved in the alternative for judgment notwithstanding the verdict or for a new trial. Smith and Frierson also filed a motion under Fed.R.Civ.P. 60(b)(6) to vacate the default judgment as to liability. The motions were denied and appeals were filed by the defendants. Subsequently, the plaintiff and defendants Smith and Frierson filed a joint motion in the district court for indemnification against the Village. The motion was denied, 618 F.Supp. 1280, and after a refusal to reconsider, appeals were taken from these rulings by Coleman, Smith, and Frierson.

## I

We turn first to the Village's appeal from the grant of the default judgment and the attending award of damages and attorneys' fees. The merit of plaintiff's claim is not in issue, only the propriety of the default. On that phase of the case, the record is replete with instances of willful transgressions of discovery procedures which were committed by defense counsel over a two-year period.

The details of counsel's conduct are recited in Judge Shadur's 1984 opinion. We see no need to repeat all of them. We do, however, highlight some of the more egregious indications of dereliction and misfeasance. Even a cursory review of those abuses of the discovery process demonstrates that the district judge was correct in concluding that the defense counsel's conduct was highly improper.

The district court repeatedly ordered defendants to meet the terms of discovery and pretrial orders. The defendants' attorney failed to meet most of the major deadlines imposed by the district judge. The attorney denied knowledge of interrogatories and only produced key documents after discovery had closed and plaintiff's counsel threatened a document destruction jury instruction. Defendants also failed to tender the police department's personnel file on Coleman to the plaintiff's counsel until the close of discovery. The court ordered numerous monetary and preclusive sanctions to prompt defendants' compliance with discovery. Finally, on February 24, 1984, Coleman's counsel filed a motion for default based on defense counsel's failure to help complete the final pretrial order required by the court. Defense counsel failed to provide promised written statements for inclusion in the pretrial order and failed to attend meetings for the purpose of completing the order. Instead of granting Coleman's motion, the district court granted defense counsel a reprieve; the district judge imposed monetary sanctions and ordered defense counsel to take the "laboring oar" in preparation of the order to be filed March 28, 1984. Counsel failed to comply with the court's instruc-

tions. At that point, plaintiff filed his motion for default.

In granting the default judgment, the trial judge wrote:

Defendants' actions (or more accurately inactions) have stymied Coleman's ability to proceed with this lawsuit. They and their counsel have repeatedly ignored this Court's orders and warnings regarding non-compliance. It is unreasonable to require Coleman, his counsel or this Court to engage in a constant battle against this recalcitrant and obstructionist behavior. Other less drastic sanctions have not succeeded in prodding either defendants or their counsel to devote the required attention to this case.

The record fully supports the judge's comments.

We hardly need further characterize the conduct of defense counsel. Indeed, the Village has done it for us in its brief: "What follows the filing of the complaint is a litany of discovery abuse perhaps unparalleled in the annals of civil litigation."

Fed.R.Civ.P. 16(f) authorizes the sanction of judgment by default for noncompliance with discovery and pretrial orders, and the extreme circumstances of this case fully justified the trial judge's imposition of that sanction. Nevertheless, the Village asks us to reverse that ruling on the grounds that it should not be held responsible for its attorney's misconduct and that if the judgment is allowed to stand, it would impose an intolerable financial hardship on the Village's citizenry. We reject these contentions.

■■■ When a defendant fails to demonstrate reasonable diligence in keeping track of progress of a lawsuit, a district court does not abuse its discretion in refusing to relieve that defendant from a default judgment. *Ben Sager Chemicals Int'l v. E. Targosz & Co.*, 560 F.2d 805, 811 (7th Cir. 1977). The record shows that the Village officials were not reasonably diligent in watching over the lawsuit, even though they were fully aware of counsel's failure to comply with discovery orders and to meet deadlines. Moreover, the new mayor and the new chief of police were penalized

$510.00 in attorney's fees after failing to attend a scheduled deposition hearing. After a second failure to appear, they were ordered to pay an additional $1,126.25. The Village willingly paid these sanctions time and again. A third failure to comply brought a contempt proceeding. These instances alone show that the Village officials were not without blame.

Moreover, *Link v. Wabash RR*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), rebuts the Village's argument:

There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." *Smith v. Ayer*, 101 U.S. 320, 326 [25 L.Ed. 955].

*Link*, 370 U.S. at 633–34, 82 S.Ct. at 1390–91. Therefore, we uphold the district court's entry of a default judgment against the Village, even though it may impose substantial financial hardship on that entity.

## II

The second issue is whether the district court abused its discretion in denying a motion to vacate the default judgment filed by two of the defendants. In seeking relief from the default judgment under Fed. R.Civ.R. 60(b)(6), the former mayor and the former chief of police contend that they should not be held responsible for the gross negligence and misconduct of the Village's attorney who represented them during the pre-default and trial stages of the litigation. They also contend that the attorney was disqualified to represent them because of a conflict of interest. The trial judge rejected both contentions and denied

their motion after conducting an extensive post-trial hearing.

■ The district court found that both Smith and Frierson took "minimal interest" in the lawsuit; that in the face of repeated discovery delinquencies "which any reasonable person in their circumstances had to know about," they failed to monitor the progress of the litigation even to the extent of being unaware of a potential default. Additionally, he found that neither defendant was a "neophyte to the litigation process" and that each had considerable court experience. The judge further commented that the attorney did not mislead the defendants or make any misrepresentations. An examination of the record supports those findings.

We need not decide today whether an attorney's gross, willful negligence might conceivably constitute extraordinary circumstances warranting Rule 60(b)(6) relief for a client against whom a default judgment has been entered. Defendants' own neglect makes the issue moot. As this court said in *Inryco v. Metropolitan Eng. Co.*, 708 F.2d 1225, 1234 (7th Cir.1983), allowing relief under Rule 60(b)(6) requires a "diligent, conscientious client." Neither defendant met that test. Indeed, their argument can best be described as a desperate hindsight effort to shift their responsibility to their lawyer; it verges on the frivolous.

In addition to asserting that they ought not be charged with their former counsel's derelictions, Smith and Frierson allege that a conflict of interest between the Village and themselves made the joint representation by the Village's attorney improper and exposed them to serious prejudice. No conflict existed, and the district court correctly rejected their argument.

■ When conflicting interests of a serious nature are at stake among joint parties, simultaneous representation by counsel undermines the fairness of the judicial process. Because of the dire consequences that joint representation may bring, a trial judge must be ever sensitive to that possibility and act accordingly, even absent an objection. Whether the possibility of a conflict does in fact exist requires an analysis of the respective interests of the joint parties.

■ In arguing that a conflict of interest existed between the Village and themselves, so as to make joint representation improper, the movants largely rely on *Dunton v. County of Suffolk*, 729 F.2d 903 (2d Cir.1984). We are convinced that *Dunton* is readily distinguishable from the case before us. In *Dunton*, the plaintiff brought a section 1983 suit against a police officer and his employer, the County of Suffolk, State of New York. An altercation had developed between plaintiff Dunton and Pfeiffer, a police officer, after the latter found his wife in a car with the plaintiff, and Mrs. Pfeiffer claimed that Dunton had made improper advances. *Id.* at 905. Pfeiffer threw Dunton out of the car and struck him repeatedly. The County Attorney represented both Pfeiffer and the County of Suffolk at trial. *Id.* at 906. In his answer to the complaint, Pfeiffer asserted a good faith immunity defense. During the trial, however, the County Attorney undermined that defense by stating that Pfeiffer acted as an "irate husband" and not as a police officer. *Id.*

The Second Circuit, observing that the County Attorney not only failed to be a "conscientious advocate" for Pfeiffer but acted against his interests, and declared that disqualification was appropriate. *Id.* at 907. In the course of its opinion, the court acknowledged that *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), had rendered municipalities liable under section 1983 for an employee's action taken pursuant to municipal policy. 729 F.2d at 907. It then concluded: "After *Monell* the interests of a municipality and its employee as defendants in a section 1983 action are in conflict.... A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy." *Id.*

We are troubled by the Second Circuit's broad holding that after *Monell* an auto-

matic conflict results when a governmental entity and one of its employees are sued jointly under section 1983. *But see Dunton,* 729 F.2d at 908 n. 4 (disavowing a *per se* rule); *see also Clay v. Doherty,* 608 F.Supp. 295, 304 (D.C.Ill.1985) (calling for sensitivity to an actual conflict instead of a *per se* conflict rule). We believe that that holding must be read in context with the factual situation present in *Dunton.* Here the facts are quite different. The Village attorney's conduct during the discovery stage did not suggest a conflict of interest. His delinquencies were equally detrimental to both the Village and the individual defendants. Likewise, his conduct after the default judgment and prior to the award of damages did not indicate a conflict. There was no "fingerpointing" or divided allegiance. In contrast to the defense asserted by counsel in *Dunton,* the Village conceded that the actions of Smith and Frierson had been taken in their official capacities.

Moreover, the claims against the Village and the individual defendants were completely different. Coleman claimed that Smith and Frierson, acting in their official capacities, violated his civil rights. The claim against the Village initially appeared similar, though derivative, of the alleged conduct by Smith and Frierson, and presumably invoked the doctrine established by *Monell.* As it developed at trial, however, the claim took on an entirely different character. The Village's liability to Coleman became a due process claim based on the fact that it had rehired police officers with less seniority, while not rehiring Coleman.

We therefore conclude that the district judge wisely exercised his discretion in denying the Rule 60(b) motion.

### III

The denial of the post-trial motion to vacate the default judgment was followed by a joint motion by Coleman, Smith, and Frierson requesting that the Village be ordered to indemnify the monetary awards assessed against the individual defendants. The motion was based on Ill.Rev.Stat. ch. 85, § 9–102, which reads in part: "A local public entity is empowered and directed to pay any tort judgment or settlement for which *an employee acting within the scope of his employment* is liable in the manner provided in this Article." (emphasis added). In denying indemnification, the district judge concluded that the actions of Smith and Frierson were "malicious" and therefore these officials were not acting in their "scope of employment." Memorandum Order, October 28, 1985, p. 4. He elaborated: "Smith and Frierson were faithless (not faithful) to the command of their master, Robbins.... They were grinding their own axes and not that of the Village of Robbins when they violated Coleman's constitutional rights." *Id.* at 3–4. The judge's ruling was based on the notion that actions of a public employee that are imbued with malice, that is, with ill-will, spite, or intent to injure, are incompatible with the duties normally assigned to the employee.

Unfortunately, our decision in *Kolar v. Sangamon,* 756 F.2d 564, 569 & n. 7 (7th Cir.1985), apparently misled the district court.[1] Our more recent decision in *Hibma v. Odegaard,* 769 F.2d 1147 (7th Cir.1985), however, has clarified the language used in *Kolar.*[2]

In *Hibma,* a section 1983 suit, this court interpreted a Wisconsin indemnification statute almost identical to the Illinois provision so as to indemnify three deputy county sheriffs for tort judgments awarded to the plaintiff. We held that the defendants were acting within the scope of their authority even though their conduct was ex-

---

1. This court in *dicta* commented in *Kolar:*
   Actions taken by a public official with malice or evil motive or intent, however, *Smith v. Wade,* 461 U.S. [30] at 56 [103 S.Ct. 1625 at 1640, 75 L.Ed.2d 632] would preclude a finding that the official acted in an official capacity.
   756 F.2d at 569 n. 7.

2. *Kolar,* 756 F.2d at 569 n. 7, appears to use the terms "scope of employment" and "official capacity" interchangeably. *Hibma* makes clear that these two concepts, as well as the concept of "under color of state law," while analytically similar, are distinct. *See Hibma,* 769 F.2d at 1153 n. 1.

tremely egregious and could be characterized only as malicious and done with evil intent to injure the plaintiff.

The three officers plotted to frame Hibma, the plaintiff, for a series of burglaries that they themselves had committed. To hide their crimes, the officers solicited Proffitt, a convicted burglar, to involve Hibma in stealing a handgun. Proffitt, who was then serving time in a work-release program, was told he would receive favorable treatment in return for his help in framing Hibma. Hibma stole the gun and gave it to Proffitt, who in turn transferred it to the deputy sheriffs. When Hibma and Proffitt arranged a meeting to divide the profits of a pretended sale of the gun, the sheriffs arrested Hibma for suspicion of burglary and theft. While Hibma was lodged in jail following his arrest, the officers entered his house and planted the property they had stolen. Later, they searched the house and recovered the property. Hibma was charged in a criminal complaint signed by one of the officers for the burglaries. Hibma pleaded guilty to stealing the handgun and received a two-year prison sentence. As a result of a plea bargain, the burglary charges were dismissed.

We stated in *Hibma* that "courts recognize that scope of employment includes 'those acts which are so "closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objective of the employment."' *Cameron* [*v. City of Milwaukee*, 102 Wis.2d 448] 307 N.W.2d [164] at 168–169 [(1981)]. ... The employee's actions in these instances further the objectives of the employment even absent good faith or an intention to benefit the employer." 769 F.2d at 1152. We then concluded: "While the deputies' actions were unquestionably designed to further their own objectives of escaping punishment for their own wrongdoing, they also were designed to further the objectives of Sawyer County. They were performing their duties as deputy sheriffs but using quite improper methods of carrying out those duties." *Id.* at 1153.

The *Hibma* court recognized that the subjective intent of the Wisconsin deputies to entrap Hibma was not the determining factor in deciding whether their actions were within the scope of their duty. A distinction must be drawn between the function of malice as an element of punitive damages, *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), and the requirement that an employee's actions come within the scope of his employment. On the one hand, malice is inextricably intertwined within the subjective motives of the employee. On the other hand, the question of whether his actions are within the scope of his employment must be measured by objective criteria.

■ Unfortunately, there is no bright line to determine what objective activities fall within the scope of employment. Surely, if Smith as the mayor of the Village had ordered Coleman to institute a divorce proceeding, such actions would not be a normal function of his office. Similarly, if Frierson had arrested Coleman while driving in an intoxicated condition outside of Illinois, his actions would be outside the scope of his employment as a Robbins police officer. We are of the view that those actions having an intimate bearing on the duties normally assigned to the office of employment, even though usurped or misused, must be considered as falling within the meaning of the term "scope of employment." We do not confuse the "under color of state law" element of section 1983 with the "scope of employment" requirement of the indemnification statute. A finding of the first element is not necessarily a finding as to the latter. However, if the relevant acts are shown to be a natural part of or incident to the service of employment, the Illinois indemnification statute is satisfied. The facts of this case bring it squarely within the statute.

■ Because of the default judgment, the only facts involved in this case are taken from the complaint and the summary read to the jury, and any inferences from those facts must be resolved in favor of Coleman, the non-defaulting party. The

complaint filed by Coleman alleged that the "defendants were acting under color of law and pursuant to their authority." The Village attorney answered on behalf of Smith and Frierson: "Defendants admit their actions alleged in the complaint, if true, were pursuant to color of law and pursuant to authority conferred upon them by law." The Village also admitted in its responsive pleading that Smith and Frierson "acted within their authority."

The factual summary, prepared and agreed to by counsel for all parties, contained the essential facts surrounding Coleman's unlawful dismissal by Smith and his false arrest by Frierson. The summary can only be construed as an admission by the Village that Smith was acting as its mayor when he disbanded the police department, fired Coleman, and refused to reinstate him; and that Frierson was acting as its chief of police when he falsely arrested Coleman.

In light of the default judgment, these admissions by the defendants suffice for us to determine that Smith and Frierson were acting within the scope of their employment. The defendants were high level functionaries with wide discretion and power. They were undertaking actions that were a natural part of their employment. Certainly, they were not acting as private individuals. Even though their actions had an ulterior motive, they must be classified as the exercise of duties encompassed by their offices.

For the reasons stated, the district court erred as a matter of law in not ordering indemnification. The decision is therefore affirmed in part and reversed in part.

It is further ordered that each party shall bear its own costs on appeal.

COFFEY, Circuit Judge, concurring in part and dissenting in part.

I concur in the Majority opinion insofar as it holds that neither the individual defendants nor the Village of Robbins has presented adequate grounds to justify this court vacating the default judgment entered in the district court. However, for the reasons set forth in my dissenting opinion in *Hibma v. Odegaard,* 769 F.2d 1147, 1161 (7th Cir.1985), I do not join that part of the Majority's opinion holding that the Village is liable for acts of its officials that are clearly outside the scope of their employment.

In *Hibma,* this court interpreted a Wisconsin indemnification statute "almost identical" (as the Majority opinion concludes, *supra* at 1148) to the Illinois indemnification statute involved herein as requiring a county to indemnify three deputy sheriffs for a tort judgment against the deputies that was the result of conduct clearly outside the deputies' scope of employment. The three deputies had framed Hibma to cover up for burglaries the deputies had committed. This court allowed indemnification, ruling that even though the objectives of the deputies "were unquestionably designed to further their own objectives of escaping punishment, they were also designed to further the objectives of Sawyer County." 769 F.2d at 1152. I dissented since I failed to understand how the deputies furthered the objectives of Sawyer County in acting to cover up their criminal conduct. The record in *Hibma* established that the deputies had violated their oath of office and abused the authority of the sheriff's office. Furthermore, the deputies admitted at trial that their actions were conceived and carried out for the exclusive, unlawful purpose of removing themselves as suspects in the previous burglaries.

The acts of the Robbins Village officials that gave rise to liability here, while not as clearly outside the scope of their employment as were the acts of the deputies in *Hibma,* still represent acts which should preclude liability on the part of the Village. The record reveals that when Mayor Smith fired Coleman from his job as special investigator, it was done to avoid public scrutiny as well as the risk of criminal indictment that might have resulted from Coleman's investigation. It is also clear from the record that other actions of Smith and Police Chief Frierson—refusing to approve Smith's reappointment as special investigator by the board of trustees, destroying

records relating to Coleman's employment and his investigation, and arresting Coleman for impersonating a police officer—were done in retaliation for Coleman's investigation. The actions were in no way related to their official duties and were not done to further the purposes of the Village of Robbins, which employed them. I fail to see how these unlawful actions fall within "the scope of employment" of the defendants. I explained in *Hibma* that this type of reasoning "punishes the taxpayers" for the unlawful acts of its officials and is contrary to "the sound public policy that [officials] who unlawfully act outside the scope of their employment for their own personal interest must be held personally responsible." 769 F.2d at 1172. I see no logical or legal reason for forcing taxpayers to bear the ultimate responsibility for the acts of public officials that are not within the scope of the officials' employment and do not further the interests of the governmental unit that employs them.

Accordingly, for the reasons I set forth in my dissent in *Hibma,* I would affirm the district court's decision and deny indemnification from the Village of Robbins.