850 F.2d 692
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Hugo and Norma C. POST, Debtors-Appellees,
v.
Charles W. EWING, Appellant.
 No. 86-3995.
 United States Court of Appeals, Sixth Circuit.
 July 5, 1988.
 
 Before KEITH and WELLFORD, Circuit Judges, and, ODELL HORTON, District Judge.*
 PER CURIAM.
 
 
 1
 Appellant Ewing was retained in December 1983 as an attorney by the debtors, Hugo and Norma Post, appellees herein, during the course of the Posts' Chapter 11 bankruptcy. In early 1985 Bankruptcy Judge Newsome ordered the debtors to amend their disclosure statement and revise their reorganization plan or suffer dismissal of their case. Before Ewing would do this additional work as attorney on the debtors' case, he demanded payment from the debtors' operating income from their dairy farm, which was in the reorganization process. As a consequence of Ewing's insistence, the Posts assigned to Ewing "milk checks" due them when received from Beatrice Dairy Products. In all, Ewing received an assignment of three checks totalling $3,750.00, which money he placed in escrow.
 
 
 2
 When the bankruptcy court learned about this unapproved procedure, it held a hearing at which the court announced its intention to dismiss the Posts' case and to order Ewing to return the assigned fees. The court instructed attorney Ewing to file a memorandum within twenty days supporting his entitlement to the funds in question; otherwise, the court would order the funds returned to the Posts. Later, the bankruptcy court entered a written order dismissing the Chapter 11 proceeding pursuant to 11 U.S.C. Sec. 1121.
 
 
 3
 Ewing did not file a memorandum within twenty days as instructed.[1] On November 14, 1985, after receiving a request for return of the $3,750.00 from the debtors, the bankruptcy court entered an order directing Ewing to return to the Posts the $3,750.00 held in escrow. In reaching its conclusion, the bankruptcy court noted that Ewing never had filed a fee application pursuant to 11 U.S.C. Secs. 330-331. The court also relied on the provision of 11 U.S.C. Sec. 349(b)(3) that states that dismissal of a bankruptcy case revests the property of the estate in the entity in which it was vested prior to the commencement of the case.
 
 
 4
 Ewing appealed the bankruptcy court's order to district court on the grounds that when the bankruptcy court dismissed the Posts' case it lost jurisdiction to order the funds returned. Ewing argued in the alternative that even if the bankruptcy court had not lost jurisdiction, its order was clearly erroneous. The district court, however, did not address the jurisdictional question. Instead, it reasoned that because Ewing had not followed the district court's instruction to file a memorandum within twenty days, Ewing could not "avoid the consequences of his failure to follow a quite reasonable and entirely understandable order of the Bankruptcy Court." The district court then affirmed the bankruptcy court's order regarding the return of fees on this basis. Ewing now appeals from this decision of the district court.
 
 
 5
 We must therefore consider whether the district court erred in dismissing Ewing's appeal without first deciding the jurisdictional challenge to the bankruptcy court's order.
 
 
 6
 The focus of Ewing's argument on appeal to this court is that the bankruptcy court's instruction that he file a memorandum supporting his entitlement to fees was not an effective and valid "order" because it was not a written order docketed by the clerk of court pursuant to Fed.R.Civ.P. 79. Therefore, Ewing argues, his failure to follow the instruction was not grounds for dismissal of his appeal. Ewing cites no authority for his position.
 
 
 7
 The bankruptcy court's instruction to Ewing may not have risen to the level of a formal order of the court. The district court characterizes the bankruptcy court's direction to Ewing both as "instructions" and as an "order." The district court, however, does not seem to assign the same formal weight to the "order" to file a memorandum as to the court's "Order" of November 14 directing Ewing to return the funds.
 
 
 8
 No case addressing the dismissal of an appeal based on an attorney's or a party's failure to follow oral instructions of a court to file a memorandum has been cited to us. A litigant's cause of action may be foreclosed in other contexts based on a failure to follow instructions by the court. See, e.g., Coleman v. Smith, 814 F.2d 1142, 1145 (7th Cir.1987) (default judgment justified based on repeated failure to meet discovery and pretrial deadlines imposed by district court); Price v. McGlathery, 792 F.2d 472 (5th Cir.1986) (upholding dismissal for failure to prosecute where plaintiff's counsel failed to comply with pretrial instructions). Ewing's distinction between a formal court order and instructions by a court is not, in any event, persuasive.
 
 
 9
 Although Ewing challenged on jurisdictional grounds the bankruptcy court's order that he return the funds, the district court failed to address the jurisdictional issue. Instead, the district court dismissed the appeal on a purely procedural basis. We find that the district court's affirmance thus failed to recognize or address the important issue: If the bankruptcy court was without jurisdiction to order a return of the funds, Ewing's failure to follow the court's instructions may have been irrelevant or beyond the court's authority to act. A failure to comply procedurally cannot vest the bankruptcy court with jurisdiction that it may not otherwise have.
 
 
 10
 We observe at this point that we cannot condone this attorney's conduct in a bankruptcy reorganization case to act without court approval or authority of the court to collect a fee by diverting funds which would otherwise go into the bankruptcy estate. Nor can we condone Ewing's actions in failing to respond to the order or instruction of the bankruptcy court. Apart from the action taken by the court which is at issue, there may be a proper reprimand or sanction for counsel's conduct absent a satisfactory explanation therefor.
 
 
 11
 The jurisdictional challenge raised by Ewing is at least arguable. Cf. Matter of Mandalay Shores Co-op. Housing Ass'n, 60 B.R. 22 (Bkrtcy.M.D.Fla.1986) (dismissal of Chapter 11 case did not divest bankruptcy court of jurisdiction over professional fee application, where order of dismissal clearly and expressly provided that jurisdiction was retained for purpose of making determination of all professionals who would be entitled to allowance of fees); In re Ennis, 50 B.R. 119, 122 (Bkrtcy.D.Nev.1985) (following dismissal of Chapter 7 case, bankruptcy court was without jurisdiction to grant injunctive relief unrelated to any pending bankruptcy case). The district court itself characterized the jurisdictional question as "intriguing." We therefore find it necessary for the district court to determine, as a threshold issue, whether the bankruptcy court retained jurisdiction to order the return of funds after the court already had dismissed the Posts' Chapter 11 case. See also Matter of Mandalay Shores, 60 B.R. 22. Only upon concluding that the bankruptcy court retained jurisdiction should the district court consider the effect of Ewing's failure to follow instructions.
 
 
 12
 Accordingly, we vacate the district court's judgment and remand the case for consideration and determination of the jurisdictional question.
 
 
 
 *
 The Honorable Odell Horton, Chief U.S. District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 Ewing states in his brief that he recalls being given twenty days within which to submit a memorandum on why the case should not be dismissed and why the fees should not be returned. Ewing further states that, as a result, when the court dismissed the case four days later, he believed the dismissal issue had become moot. Ewing admits, however, that Judge Newsome's law clerk called him about a month later and asked where the memo was