**Bonita SPINKA and Karl Halperin, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Judith BRILL, Robert Schlossberg, John Alden, and Berle Schwartz, Defendants.**

No. 88 C 8654.

United States District Court, N.D. Illinois, E.D.

July 20, 1990.

Daniel A. Edelman, Chicago, Ill., for plaintiffs.

Kenneth C. Shepro, Donald J. Kreger, Ruth Krugly, Altheimer & Gray, Chicago, Ill., Berle L. Schwartz, Law Office of Berle L. Schwartz, Highland Park, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiffs Bonita Spinka ("Spinka") and Karl Halperin ("Halperin") bring this action under 42 U.S.C. § 1983 alleging that their civil rights were violated when defendants Judith Brill, Robert Schlossberg, John Alden, and Berle Schwartz failed to hold elections for the position of drainage commissioner. We have before us plaintiffs' motion to certify a class, as well as the parties' cross-motions for summary judgment. For the reasons stated herein, we grant plaintiffs' motion for class certification and defendants' motion for summary judgment.

## FACTS

Defendants Brill, Schlossberg and Alden served as commissioners of Union Drainage District No. 1 (the "District") and hired defendant Schwartz to be the District's counsel. Organized in 1913, the District covers approximately 3 of the 25 miles of the middle fork of the North Branch of the Chicago River. Under Illinois law, the Drainage District must be managed by three commissioners, elected for staggered three-year terms. Ill.Rev.Stat. ch. 42, ¶ 4–5 (1987).

The commissioners named as defendants in this suit, however, were not elected to their positions. At the time they first began to serve, there had been no election since 1959 when Dudley Dewey and two other individuals were elected commissioners. Before his death Dewey appointed Ralph Brill as District commissioner. On April 23, 1983, Ralph Brill appointed his wife, Judith Brill, and resigned, leaving her as the only remaining commissioner. On May 8 of that same year, Brill appointed Schlossberg to the position. Brill and Schlossberg then hired Schwartz to act as counsel for the District. In May 1985, Brill and Schlossberg appointed Alden to fill the one position left vacant.

While in office, the defendants decided to hire contractors to clean up the middle fork of the North Branch of the Chicago River. Their decision rendered the District liable for $300,000 in expenses, including $30,000 in legal fees payable to defendant Schwartz. To pay for these expenses, the commissioners assessed the landowners of the District.

Plaintiff Halperin contested the assessment in state court. The Circuit Court found that the defendants were *de facto* commissioners and upheld both the annual and the special assessments levied by defendants. The Illinois Appellate Court affirmed, *In The Matter of Union Drainage District No. 1 of the Township of Deerfield, County of Lake and of Northfield, County of Cook*, 184 Ill.App.3d 1109, 149 Ill.Dec. 947, 562 N.E.2d 411 (1989).

Between the time defendants took office and 1988, no elections were held for the

position of drainage commissioner. In 1988, defendants applied to the Circuit Court of Lake County for entry of an Order for Election Instructions. The court ordered that annual elections should resume. To maintain the staggered terms of the commissioners, the order provided for only one commissioner to be elected each year. The three non-elected defendant commissioners were thus scheduled to stand for election or be replaced over a three-year period. The first election was held on September 6, 1988. Plaintiff Halperin, running on the platform of abolishing the Drainage District, defeated defendant Schlossberg.

The Drainage Code provides that landowners within the District shall elect the commissioners. Ill.Rev.Stat. ch. 42, ¶ 4–5 (1987). Plaintiffs are two of approximately 1,800 eligible landowners. They allege that defendants conspired to deprive the property owners of their right to vote and move to certify a class of all landowners entitled to vote for commissioners between January 1, 1985 and the present.

Finally, plaintiffs and defendants both move for summary judgment on the issue of liability. For the following reasons, we grant the motion to certify the class, grant defendants' motion for summary judgment, and deny plaintiffs' motion for summary judgment.

## DISCUSSION

### A. *Class certification*

■ Plaintiffs have moved that we certify a class consisting of all persons, other than the defendants, who were entitled to vote for commissioners of Union Drainage District No. 1 at any time between January 1, 1985 and the present.[1] Defendants object to making this a class action. For the following reasons, we certify a class consisting of all persons, excluding defen-

dants, who were eligible to vote for the office of commissioner in the two-year period that ended when the complaint was filed on October 11, 1988.[2]

Under Fed.R.Civ.P. 23(a), there are four conditions that must be met before litigation may proceed as a class action. The class must be so numerous that joinder of all is not practical; there must be questions of law or fact common to the claims of each class member; the claims or defenses of the class representatives must be typical; and the court must be confident that the class representatives will fairly and adequately protect the interests of the class.

Defendants agree that the proposed class meets the requirements of numerosity and commonality but maintain that the other requirements are not met. They argue first that the individual plaintiffs cannot fairly and adequately protect the interests of the class. They argue further that the interests of the individual plaintiffs are actually antagonistic to the interests of the class.

Defendants base their argument in part on the results of the election that was finally held in September 1988. In that contest, plaintiff Halperin ran for commissioner on the platform of abolishing the District. Although he won by a wide margin, defendants note that votes were cast by only 24% of the proposed 1800–member class of eligible voters. Furthermore, they note, 13% of those who voted actually voted against Halperin. Accordingly, defendants conclude, plaintiffs cannot adequately represent the interests of the class members who declined to vote nor the interests of the members who voted against Halperin. We disagree. In a suit that seeks to vindicate the right to vote, all class members have an identical interest. The fact that some class members did not choose to exercise that right in one specific election is not relevant. Nor is it relevant that some

---

**1.** In their complaint, plaintiffs purport to bring this action on behalf of both a class and a subclass. The subclass consists of all landowners in the drainage district who voted for Halperin in the last election. As plaintiffs' motion for class certification does not mention this subclass, we do not deal with it.

**2.** The parties agree that the applicable period of limitations is two years. Although plaintiffs argue that this case qualifies for the "continuing violation" exception, we disagree.

class members voted against Halperin. In this suit plaintiffs seek to vindicate their right to vote, not their interest in having a particular person hold a particular office.

Defendants also argue that the interests of the named plaintiffs are actually antagonistic to the class. They contend that the Drainage District must indemnify defendants for any damages awarded to plaintiffs and the Drainage District would thus be forced to assess the class members in order to pay the award. As support, defendants cite *Coleman v. Smith,* 814 F.2d 1142 (7th Cir.1987).

Defendants base their argument on an unsound premise and a misapplication of the *Coleman* case. The indemnification statute interpreted in *Coleman* provided that a municipality must indemnify its employees for liabilities incurred while they acted within the scope of their employment. It is true that the defendants in this case acted within the scope of their role as *de facto* commissioners and, in the case of Schwartz, as counsel for the Drainage District. The statute that applied in *Coleman,* however, does not apply to drainage districts, and no statute provides for any similarly broad guarantee of indemnification even for legally-elected commissioners of Illinois drainage districts. This lawsuit asks for damages for the defendants' willful actions, and the Illinois Drainage Code provides that commissioners will be indemnified only for negligent actions. Furthermore, the applicable indemnification statute does not cover punitive damages, which plaintiffs also request in this case. *See* Ill.Rev.Stat. ch. 42 ¶ –4–40 (1987). Because we do not agree that the voters of the Drainage District must eventually foot the bill for the damages plaintiffs are attempting to collect, we do not believe that the interests of the named plaintiffs and the class are antagonistic. We also reject defendants' argument that the claims of the named plaintiffs are not typical of the

class. Our certification of the class extends only to deciding the issue of liability.

### B. *Summary Judgment*

To succeed on their section 1983 claim, plaintiffs must show that defendants, acting under color of state law, deprived plaintiffs of a right guaranteed by the Constitution or statute of the United States.[3] The defendants clearly acted under color of state law. They admittedly held themselves out as drainage commissioners, and the Illinois Appellate Court has affirmed the Circuit Court's ruling that defendants were *de facto* commissioners. *In The Matter of Union Drainage District No. 1 of the Township of Deerfield, County of Lake and of Northfield, County of Cook,* 184 Ill.App.3d 1109, 149 Ill.Dec. 947, 562 N.E.2d 411 (1989). Because the defendants acted under color of state law, the plaintiffs have stated a claim under § 1983 if defendants' conduct deprived plaintiffs of a right protected by the Constitution or statutes of the United States.

■ The first issue is whether the plaintiffs' right to vote for drainage commissioner is protected by the Constitution. Defendants argue that it is not, and they rely on *Rodriguez v. Popular Democratic Party,* 457 U.S. 1, 102 S.Ct. 2194, 72 L.Ed.2d 628 (1981). We do not find *Rodriguez* persuasive in this case. At issue in *Rodriguez* is the manner in which a vacancy is filled in the Puerto Rico legislature. Defendants in that case argued that appointing a replacement, instead of holding an election, violates the Constitution. *Rodriguez* holds that the Constitution permits states to provide that some offices will be filled by appointment instead of elections. *Id.* at 14, 102 S.Ct. at 2202. When state law provides, as it does here, that a certain office will be filled by election, the holding of *Rodriguez* does not apply.

---

**3.** 42 U.S.C. § 1983 provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other per-

son within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

Plaintiffs argue that when state law provides that an office is elective, then the Constitution protects that state-created right to vote. They rely on *Duncan v. Poythress,* 657 F.2d 691 (5th Cir.1981), *cert. dismissed,* 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982), where plaintiffs successfully contended that Georgia officials violated the Constitution by appointing someone to fill a vacant office instead of calling a special election as a Georgia statute required. The Fifth Circuit held that the substantive component of the due process clause forbids state officials to disenfranchise the state electorate in violation of state election law. *Id.* at 708. Thus, while *Rodriguez* does not require that states select all their public officials by holding elections, *Duncan* forbids state officials to circumvent state laws that require them to fill offices by elections.

We agree with plaintiffs' general proposition that when a state provides that an office will be filled by holding elections, the state creates a right to vote that the Constitution protects. The next question is whether plaintiffs were deprived of that right, and if so, whether defendants are responsible for that deprivation.

█ Plaintiffs contend that section 4–5 imposes on the commissioners a duty to call elections. They contend that by intentionally refraining from calling elections, the commissioners violated that duty and deprived plaintiffs of their state created right to vote for drainage commissioner. We do not read the statute in the manner plaintiffs suggest.

Section 4–5 provides that "[c]ommissioners for all districts ... shall be elected by the adult owners of land in the district in the manner provided by this Section." Ill. Rev.Stat. ch. 42, ¶ 4–5 (1987). Therefore, the due process clause of the Fourteenth Amendment protects the plaintiffs' right to an election "in the manner provided by this Section." As plaintiffs suggest, the statute does provide in the first instance that the commissioners shall call annual elec-

tions. Yet it also provides that if the commissioners do not call elections, then the landowners may do so:

In any case where the commissioners have failed to give notice and to hold an election as provided in this Section, the circuit court of the county in which the district is organized may, on the petition of any owner of land in the district, designate the time and place for a special election.

Ill.Rev.Stat. ch. 42, ¶ 4–5 (1987). The constitutionally protected interest at issue in this case, then, is plaintiffs' right to an election, which may be called either by the commissioners or by the Circuit Court acting on a petition of the landowners.

The only issue remaining is whether defendants' failure to call elections deprived plaintiffs of the constitutionally protected right to have an election in the manner provided by Section 4–5. We conclude that it did not, because the commissioners did not interfere with the property owners' ability to petition the Circuit Court for an election. We thus arrive at a different result than the Fifth Circuit in *Duncan v. Poythress, supra.*

In *Duncan,* the Fifth Circuit concluded that Georgia officials had violated plaintiffs' constitutionally protected right to vote and upheld the district court's award of nominal damages. That case is distinguishable from the case at bar, however, because the Georgia statute at issue in *Duncan* lacks a scheme comparable to that of Section 4–5. Section 21–2–504 of the Georgia code [4] requires that the "authority with whom the candidates for such nomination or office file notice of candidacy shall call a special primary or election" to fill certain vacant positions. Ga.Code Ann. § 21–2–504 (1987). The statute provides no alternative means for the voters to call an election upon the authority's failure to do so. If the Constitution protects the voters' right to have the elections for which state law provides, then it protected Georgia voters' rights to have the officer designated

---

**4.** The Georgia statute at issue in *Duncan* has now been renumbered from § 34–1514 to § 21–2–504.

by statute call an election. In contrast, as section 4–5 of the Illinois Drainage Code provides for elections on the petition of the landowners, Illinois drainage commissioners do not violate the voters' right to an election as provided in Section 4–5 by simply failing to call for elections. While we subscribe to the general principle enunciated in *Duncan*, we do not agree that its proper application requires that we find that defendants in this case are liable. Thus, we reject plaintiffs' contention that *Duncan* is "a decision on all fours with the present case" (plaintiffs' brief at 2).[5]

The defendants' failure to call elections did not deprive plaintiffs of their right to an election as called for in Section 4–5 of the Drainage Code. Thus, they did not deprive plaintiffs of a constitutionally-protected right. We therefore deny plaintiffs' motion for summary judgment and grant defendants' motion for summary judgment.[6]

## CONCLUSION

For the foregoing reasons, we grant the motion to certify the class and grant defendants' motion for summary judgment. All other motions are denied and the case is dismissed.

---

5. Plaintiffs' theory of damages, apparently, is that if elections had been held, the voters would have elected candidates who would have abolished the drainage district instead of incurring $300,000 in liability. Thus, the plaintiffs hope to recover in this lawsuit what they lost when the state courts sustained the validity of the assessment. Even if we were to agree with plaintiffs on the issue of liability, we seriously doubt that they could ever sustain such a theory of damages, especially as the state courts have ruled that the nonelected commissioners were nevertheless *de facto* officeholders who legitimately incurred expenses and validly levied assessments. To figure damages by examining

what actions would have been taken by drainage commissioners who may or may not have been elected had elections been held is simply too speculative, and the chain of causation is too attenuated. Courts will not undertake such an inquiry. We note that the district court in *Duncan* awarded nominal damages and declined to award punitive damages.

6. In view of our resolution of the case at this stage, we have no need to decide plaintiff's motion to resolve the potential conflict of interest posed by defendant Schwartz representing both himself and the other defendants.