**DUVAL RANCHING COMPANY; S & D Company; Kirk and Ramona Dahl; Sandra L. Sharp; and Sandra L. Sharp and Randall Sharp as trustees of the Leslie B. Sharp Testamentary Trust, Plaintiffs,**

v.

**Daniel R. GLICKMAN, Secretary of Agriculture; Jack Ward Thomas, Chief, United States Forest Service; R.M. "Jim" Nelson, Acting Forest Supervisor, Humboldt National Forest; D. Waive Stager, Acting District Ranger, Ruby Mountains Ranger District, Humboldt National Forest; United States Forest Service; and United States, Defendants.**

**CV–N–95–38–ECR.**

United States District Court,
D. Nevada.

June 7, 1996.

**470**

Gary D. Woodbury, Elko, NV, for Plaintiffs.

Shirley Smith Asst. U.S. Atty., Reno, NV, Stephen G. Bartell, Environmental Defense Section, Environment & Natural Resources Div., U.S. Department of Justice, Washington, D.C., for Defendants.

## ORDER

EDWARD C. REED, JR., District Judge.

Before the court is the federal defendants' Objection to Notice of Association of Counsel and Notice of Appearance (Doc. # 52). The federal defendants object to the Notice, filed by Duval Ranching Company et al., of the entry by Elko County District Attorney Gary Woodbury of an appearance for the private plaintiffs in this action (Doc. # 53). Also before the court is the federal defendants' Motion for Protective Order (Doc. # 54). The court's disposition of the latter motion (Doc. # 54) depends entirely on its ruling on the objections (Doc. # 52) to District Attorney Woodbury's appearance in this matter.

State law prohibits the private practice of law by a district attorney. Nev.Rev.Stat. § 245.0435. But because the phrase "private practice of law" is defined in that statute as the legal representation, *for compensation,* of a person or organization other than the district attorney's governmental client, Mr. Woodbury has determined that his representation of the private plaintiffs herein *gratis* is not prohibited by Section 245.0435.

At a hearing on the federal defendants' objections to District Attorney Woodbury's appearance on behalf of the private plaintiffs, Mr. Woodbury argued that despite his continued receipt of his county salary during this action, he does not represent the plaintiffs "for compensation." Mr. Woodbury's reading of Section 245.0435 in effect requires the words "for compensation" to be construed as if they read "for compensation *by the private client.*" Obviously the statute says no such thing. The federal defendants have argued that Mr. Woodbury's continued receipt of his salary as District Attorney

belies his assertion that he appears herein without compensation. In response, Mr. Woodbury argues that the federal defendants' reading of the statute renders the exemption nugatory: If a district attorney must forswear his salary during the course of representing a private client, a sitting district attorney's ability, for example, to appear on behalf of the estate of a family member, or to negotiate a divorce, or a conveyance of real property, is very likely eliminated as a practical matter.

The court must construe Section 245.0435 unaided by published opinions of a Nevada court, by opinions of Nevada's attorney general, or by documented evidence of legislative intent. It does appear illogical to require a district attorney who wishes to represent a client *gratis* to resign his position, or renounce his salary, during the period he represents a private client. The federal defendants' reading of the statute would, as a practical matter, defeat the apparent purpose of the statute to permit district attorneys to take on relatively simple private legal work, for no extra money, and which do not involve matters likely to cross their official desks. For that reason, the court must decline to read the phrase "for compensation" to require a district attorney wishing to take on such matters to do without their salaries for the duration of the private representations.

That said, the court is obliged to note for the record its reservations regarding the use to which Mr. Woodbury and Elko County seek to put Section 245.0435. The court seriously doubts that the legislature considered that statute's application to cases like the one *sub judice*. As the court has already indicated, it does not appear reasonably capable of question that the statute was intended to cover relatively simple, brief, routine matters wholly unconnected to the public work of a district attorney: the probate of relatives' or friends' estates, the conveyance of realty, the preparation of divorce papers, and the like. The present action bears little, if any, resemblance to such cases.

Elko County itself is formerly a party to this litigation over the legality of federal regulation of local residents' rights in public lands. Mr. Woodbury previously attempted to appear in his official capacity on behalf of these same private plaintiffs. At the hearing on the federal defendants' objections to his appearance pursuant to Section 245.0435, Mr. Woodbury declared Elko County's "legal interest" in the outcome of this litigation. Mr. Woodbury admitted that the Elko County Board of Commissioners is keenly interested in pursuing this action. And the court is forced to wonder from whose pockets come the funds—other than Mr. Woodbury's salary—needed to conduct this litigation. Who is paying deposition costs, filing fees, process servers? The County previously expressed its desire to participate in this lawsuit, and argued that the private plaintiffs lacked the financial wherewithal to litigate independently of the County. The court doubts Mr. Woodbury himself is footing the bill, despite his claim at the hearing that he would have taken this case even were he not District Attorney of Elko County.

Section 245.0435 must be read in light of the rules of professional conduct. The statute cannot have been intended to permit district attorneys to engage in the representation of persons or organizations other than their governmental clients where the subject matter of the private representation is of great interest to the governmental client. The court cannot impute to the legislature an intent to create such a grave risk of a conflict of interest between a district attorney's statutory duty and the attorney's representation of a private client. The statute should be read to permit such private practice only when the subject matter of the representation of the private client will not interfere with, or be influenced by, the public policy of the county which is the district attorney's primary client.

Nevertheless, the court being unable to agree with the federal defendants' more restrictive reading of Section 245.0435, the court cannot say that Mr. Woodbury's appearance on behalf of the private plaintiffs does not comport with the letter, if not the spirit, of the statute.

The court's inquiry, however, is not yet at an end. Even if the court concedes, as it must, that Mr. Woodbury's representation of

the private plaintiffs can meet the requirements of Section 245.0435, there remains the question whether the representation may constitute a violation of the ethical rules governing attorneys' professional conduct.

Nevada Supreme Court Rule 158(6)(b) prohibits a lawyer from receiving compensation for representing a client from a person or entity other than that client unless "there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship...." No doubt Mr. Woodbury's position is that he is not "receiving compensation *for* representing" the private plaintiffs from the County. But he is being paid by Elko County and appears still to be answerable to the Elko County Commissioners with respect to the subject matter of the representation. At the hearing on the federal defendants' objections to his appearance, District Attorney Woodbury conceded that during the course of this action he would most likely "carefully consider" the advice of the County Commissioners. Mr. Woodbury declared this action, and his representation of the private plaintiffs therein to be in the "best interest" of the Commissioners, the County, and his private clients.

The possibility that the County Commissioners may influence Mr. Woodbury's professional judgment with respect to his representation of the private plaintiffs therefore creates a potential for a conflict of interest, in violation of Supreme Court Rule 158. Assuming Mr. Woodbury's representation of the private plaintiffs to be technically within the letter of Supreme Court Rule 158 and Nev.Rev.Stat. § 245.0435, he has placed himself in a position wherein in the exercise of his professional judgment on behalf of his private clients could be affected by his public responsibility to the County. *See In re Discipline of Singer,* 109 Nev. 1117, 865 P.2d 315, 317 (1993).

The court must recognize, however, that the plain language of Supreme Court Rule 158 does not appear to prohibit Mr. Woodbury's representation of the private plaintiffs in this action. In accordance with the court's determination that Mr. Woodbury is not, *senso strictu,* being paid for representing the private plaintiffs within the meaning of Nev.

Rev.Stat. § 245.0435, the court must likewise conclude that he is not "accepting compensation for representing a client from one other than the client" within the literal meaning of Supreme Court Rule 158. Nevada follows the American Bar Association's Model Rules of Professional Conduct; Supreme Court Rule 158 is derived from ABA Model Rule 1.8. To this extent Nevada's ethical rules are somewhat more liberal than the ABA's Model Code of Professional Responsibility. Nevertheless, the ethical principles enshrined in the Model Code are useful as a guide for the professional conduct of attorneys, and for that reason the court deems it appropriate to cite some provisions of that Code. For example, under the Model Code, an attorney may be subject to discipline for accepting employment when the exercise of professional judgment on behalf of a client will or reasonably may be affected by the attorney's own financial, business, property or personal interest. ABA DR 5–105. An attorney may also be subject to discipline for accepting employment where her independent professional judgment could be compromised. DR 9–101. *See, e.g., Lyman v. Grievance Committee,* 154 A.D.2d 223, 552 N.Y.S.2d 721 (1990) (censuring district attorney for representing private clients in civil matters which were also the subject of his official investigation).

On the other hand, Nevada Supreme Court Rule 157(2) provides:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

. . . .

the lawyer reasonably believes the representation will not be adversely affected; and

. . . .

the client consents, preferably in writing, after consultation.

Rule 157 is derived from the American Bar Association's Model Rule of Professional Conduct 1.7, which in turn derives from Canon 5 of the former ABA Model Code of Professional Responsibility. The rule is de-

signed to ensure an attorney's professional loyalty to her client, which loyalty is an essential element in the lawyer-client relationship. The official comment to ABA Model Rule 1.7 warns that loyalty to a client suffers when a lawyer cannot consider, recommend or carry out an otherwise appropriate course of action on the client's behalf as a result of the lawyer's other responsibilities or interests. For example, an impermissible conflict of interest may arise because of a disagreement as to litigation strategy, or the fact that there may be substantially different possibilities for settlement among the clients and the third party. ABA Model Rule 1.7 Official Comment.

█ This impairment of a lawyer's loyalty may constitute a violation of the client's absolute right to her lawyer's undivided loyalty. *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 232–33 (2nd Cir.1977). When a lawyer's responsibilities to a third party may impair the representation of a client, the lawyer must decline or withdraw from the representation. *See, e.g., In re Grand Jury Subpoena*, 781 F.2d 238 (2d Cir.1985), *cert. denied*, 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986).

The representation of private clients by a district attorney may be impaired by the attorney's official responsibilities. *See, e.g., Coleman v. Smith*, 814 F.2d 1142 (7th Cir. 1987); *Sanders v. Mississippi State Bar Ass'n*, 466 So.2d 891 (Miss.1985) (finding prosecutor engaged in private practice regarding matter which could foreseeably conflict with prosecutorial duty to have engaged in professional misconduct). Here, Mr. Woodbury declared at the hearing that he would "carefully consider" the advice of the County Commissioners in the course of his representation of the private plaintiffs. It therefore appears reasonably likely that his representation of the private plaintiffs may be affected by his responsibilities with respect to the Board of Commissioners. For Mr. Woodbury to continue to represent the private plaintiff, he must, under Supreme Court Rule 157, reasonably believe that that effect will not be adverse to his representation of the private plaintiffs, and he must obtain their consent after consultation.

A lawyer cannot represent conflicting interests, because she owes each client her undivided loyalty. In ordinary civil practice, a lawyer may choose between clients whose interest conflict, or whose interests may in the future diverge. But a public prosecutor permitted by statute the limited right to engage in private practice has no such freedom to choose between clients: The private interest must yield to the public one. *In re Ridgely*, 106 A.2d 527 (Del.1954). The private plaintiffs in the present action must be aware of these limits on the loyalty they can demand from their lawyer.

Given the reasonable likelihood that, at some point in the course of this litigation, the needs or desires of the County Commissioners may diverge from those of the private plaintiffs, District Attorney Woodbury is advised to exercise great vigilance to ensure that his private clients receive the same degree of independent professional advice they would receive from an attorney without any connections to, responsibility for, or contact with, the County or its Commissioners. If he fails to render such advice, he, and he alone, assumes the risks of providing conflicted legal representation. He wishes to appear as an ordinary private attorney, bereft of official protections. *Caveat actor.*

**IT IS THEREFORE HEREBY OR-DERED** that the federal defendants' Objection to Notice of Association of Counsel and Notice of Appearance (Doc. # 52) is **OVER-RULED.** Mr. Woodbury, acting in his individual capacity, may continue to represent the private plaintiffs pursuant to Nev.Rev. Stat. § 245.0435.

**IT IS FURTHER HEREBY ORDERED** that the federal defendants' Motion for Protective Order (Doc. # 54) is **DENIED.**